Douglas *v.* Chapin.

ELIZA DOUGLAS, EXECUTRIX *vs.* MERRICK W. CHAPIN.

A writ in assumpsit described the party defendant as " C. & Co. a firm doing business in H. and consisting of C.," and the declaration throughout used the term " defendants." Service was made on C. alone, who alone appeared and made defence. In support of the declaration the plaintiff gave in evidence a contract signed " C. & Co." On the trial C. requested the court to charge the jury that there could be no recovery against him alone, and the court refusing, and a verdict being rendered for the plaintiff, he moved in arrest of judgment on the same ground. Held, that as the writ stated explicitly that the firm consisted of C. it did not appear upon its face that there were other partners who should have been joined, and that therefore advantage of the nonjoinder, if there were in fact other partners, could have been taken only by plea in abatement.

D. contracted with the defendant to go to California and take charge of the engineering department of a steamboat there belonging to the defendant, he to furnish all his help and the defendant to pay him $250 per month, with his board on the steamer, the agreement to include twelve months from the time that D. should report himself to the defendant's agent at San Francisco, each party to have the privilege of withdrawing from the contract at the end of six months on giving certain notice; the contract closing with the following clause: " It is expected that the services will be paid at the end of each month." D. at once went to San Francisco, taking with him an assistant engineer, reported himself to the defendant's agent there, and commenced service on the boat. The agent soon after resigning and another agent sent out by the defendant being detained by sickness on the way, there was no one to take charge of the boat, which was soon after attached by the defendant's creditors, and afterward sold on execution. Others having attached, D. did also for the amount then due to him, and subsequently received $387 from the avails of the sale. In the mean time he applied to the defendant to discharge him from the contract and allow him to return home, which the defendant declined to do, saying that when the other agent arrived it would all come right. He then continued till the end of the six months ready to serve the defendant when called upon, and doing occasional jobs for other parties, to get the means of subsistence. No board having been furnished on board the boat after she had ceased to run, he was compelled to procure his board elsewhere. He also paid for the board of his assistant from the time the boat ceased to run till she was sold, when he dismissed him. In a suit brought by the executrix of D. for the money due for his services and expenditures,—it was held, 1. That the plaintiff might recover for the money paid for the board of the assistant; the contract, while it required him to furnish his own assistants, yet in providing that he should have his board on the steamer, intending the board not only of himself but of his assistants. 2. That the jury, in determining the amount to be allowed the plaintiff might properly estimate the value of the services of the assistant, the service rendered by him being a part of the whole service contemplated by the contract. 3. That a memorandum book kept by D. and in which he made frequent

Douglas *v*. Chapin.

entries of his transactions in California, under the contract, was admissible in evidence, under the statute with regard to the memoranda of deceased persons. 4. That a statement made by D. at San Francisco as he was leaving there, that he was going up the river to Sacramento (where the [boat was) to go on board the boat, was admissible as part of the *res gestæ*, in proof of the fact that he so went. 5. That a witness who at D's request had called on his attorney and received for him his share of the proceeds of the sale of the boat, might properly testify as to the amount so received, and as to his authority to receive it, although D. had sent by him a written order to the attorney, requesting the latter to pay the money to the witness, and the letter was not produced on the trial, or shown to be lost. 6. That the contract was to be taken as stipulating that D. should be paid monthly, and that interest was therefore properly allowable from the end of each month, during the term of service, on the wages that had accrued during the month. 7. That the plaintiff was entitled to recover compensation for the time and board of D. after the sale of the boat, to the end of the six months, his earnings during that time in the service of others being allowed the defendant, since the defendant refused to release him, and he remained ready and willing to serve him whenever called upon.

On a motion for a new trial for a verdict against evidence, it being claimed among other things that the damages were higher than the evidence would warrant,—it was held, that though the damages appeared to be greater than the court would have given, yet as they depended on sundry matters of account which the evidence did not enable the court to state with precision, it was not so manifest that the jury had erred in the assessment of damages as to make it the duty of the court to set aside the verdict.

Assumpsit, brought by the plaintiff as executrix of Henry Douglas. The declaration contained two special counts and the common counts for work and labor, and money paid.

The portion of the writ describing the defendant was as follows : "By authority of the state of Connecticut you are hereby commanded to attach &c. the goods or estate of M. W. Chapin & Co., a firm doing business in said Hartford, and consisting of Merrick W. Chapin, and them summon to appear before the superior court, &c." The plural term "defendants" was used throughout the declaration.

The plaintiff claimed to recover for services rendered and moneys paid out by the said Henry Douglas, under the following contract.

"Memorandum of an agreement between Henry Douglas on the first part and M. W. Chapin & Co. on the second part, witnesseth; that whereas the said Douglas agrees to go to San Francisco, California, and take charge of the engine

department of the steamer Jenny Lind, or steamer Hartford, under the direction of Mr. F. P. Green or Capt. Le Fevre, or whoever else the owners may designate as agents. The stipulations of the agreement are as follows: the said Douglas agrees to take charge of the engine department and run the engine of said boat, furnishing all his help for so doing, including fireman, and such other help as he may require in that department, and do all repairs on the boiler and engine of said boat, which can be done on board with the tools on board, and do all in his power to prevent the necessity of going to a shop for repairs, and honestly and faithfully fulfill and perform all the duties belonging to the engine department. For the faithful performance of the aforesaid duties as specified, we the said M. W. Chapin & Co., on the second part, agree to pay the said Henry Douglas the sum of $250 per month, and board on board said steamer, for the services performed as heretofore expressed. And it is further agreed that should there not be for any cause an engineer wanted on board the steamer Jenny Lind, it is agreed and understood that the said Douglas with his assistant will go on board and take charge of the engine department of steamer Hartford, and run her in the same manner as the Jenny Lind, furnishing his own help, and doing all and everything as expressed for the Jenny Lind, as before stipulated, and the said Chapin & Co., agree to pay for so running the steamer Hartford, an additional sum of $50 per month; and also further agree to pay a further additional $50 per month, during the time said boat performs three trips per week on the Sacramento route, or similar route. The understanding is: the sum to be paid for running the Jenny Lind, is $250 per month; for running the Hartford, $300 per month, and an additional sum of $50 per month when she runs three trips per week, but not otherwise. And it is further understood, that this agreement is to include twelve calendar months, from the time the said Douglas arrives at San Francisco, and reports himself to the agents of said boats, and which said Douglas agrees to do within twenty-four hours after his arrival in that port. And it is also understood, that at the

end of six months from the time of his arrival at San Francisco, either party to this instrument may withdraw from this contract, by giving the other party one month's notice, before the expiration of said six months. It is expected the services will be paid at the end of each month. Hartford, Nov. 29, 1851. Henry Douglas, M. W. Chapin & Co."

The case was tried on the general issue, closed to the jury, at the term of the superior court holden in the county of Hartford, in September, 1856.

On the trial the plaintiff offered evidence to show that the said Douglas soon after the making of the contract went to California, taking with him one Chase, his step-son, who was a competent and reliable assistant, reported himself on his arrival at San Francisco to the agent, Mr. Green, went immediately up to Sacramento where the boats Jenny Lind and Hartford were lying, and commenced work upon them: that in consequence of the sickness and detention of Capt. Le Fevre on the Isthmus, on his way to California, and the resignation of his agency by Mr. Green, there was no one to attend to the business of the defendant, or of the boats; that they were, in about two months thereafter, attached and sold; that said Douglas was not employed for any considerable time on the boats, which in consequence of the absence of the agent were run but a few trips; that he and his assistant were not furnished with board on the boats for the same reason, and he was obliged to board himself and assistant for about two months; that when the boats were sold he discharged his assistant, who sought other employment; that he held himself ready for service, and requested through his friends at home that the defendant would release him from his contract, so that he could go home, but that the defendant declined to do so, saying that all would come right when Le Fevre arrived; that Capt. Le Fevre did not arrive, and said Douglas remained during the term of six months, obtaining temporary jobs when he could do so; that the defendant during all that time recognised the contract as in force, declining to permit him to return, and paying to the plaintiff on account of the contract, a monthly stipend which

he agreed to pay her; that when the boats were attached, two months' wages being then due, and the said Douglas without money, he attached the boats also, and the avails of the sale were allowed in the account of the plaintiff as a credit to the defendant, as she admitted the money earned in temporary jobs should be also.

The plaintiff testified that her son, Andrew W. Chase, went with her husband to California for the purpose of assisting him in the performance of his contract, and that he was a practical mechanic and engineer, twenty-four years of age. To this evidence the defendant objected, and insisted that by the contract he was not bound to pay for said Chase going to California, that said Douglas could employ his assistant there, and that the fact that he took said Chase with him was not admissible, but the court admitted the evidence, and left it to the jury to say, upon the evidence, whether the said Douglas conducted reasonably in taking out said Chase with him to California, instead of running the risk of procuring suitable assistance there, and whether the plaintiff was entitled to recover upon all the facts in the case, anything, and how much for the services of said Chase.

The plaintiff also offered in evidence a memorandum book kept by the said Douglas while in California, containing frequent entries under their respective dates of his transactions there under his contract with the defendant, and of his expenditures for the board of himself and his assistant, with sundry entries of a more general character, and offered to read in evidence to the jury, certain entries therein pertaining to the matters on trial. To this evidence the defendant objected, and insisted that the book was not legally admissible; that the entries were entries made by the said Douglas in his own favor, that the book was not a book of accounts, and that the entries were not entries or memoranda within the statute relating to the admission in evidence of the entries and memoranda of deceased persons. But the court overruled the objection, and admitted the evidence.

The plaintiff, for the purpose of proving that the said Douglas on his arrival at San Francisco, went to the boats

Douglas *v.* Chapin.

which were lying at Sacramento, for the purpose of com-
mencing work thereon, offered in evidence his declaration,
made as he was leaving San Francisco, that he was going
up the river to Sacramento to go on board the boats. To
this evidence the defendant objected, but the court admitted
it.

It appeared in evidence that the steamer Hartford was
sold in California while said Douglas was there, under cer-
tain legal processes, to one of which he was a party plaintiff,
and that he claimed a portion of the proceeds of the sale, and
that after he left California one Granger received the same
for him, and the plaintiff, for the purpose of proving that the
proceeds were less than the defendant claimed them to be,
and how much should be allowed the defendant therefor,
offered to prove by the said Granger that said Douglas had
authorized him to receive the same, and that he did receive
and forward them, and said Granger testified as follows:
"Douglas gave me a written order on his lawyer for the
money. He also said to his lawyer in my presence, that he
had left the matter with me, for before it could be finally
settled he should take the steamer for home. I settled with
the lawyer and received the money and forwarded it. It
amounted to $387." To this evidence the defendant object-
ed, and insisted that it was not competent for the plaintiff in
this manner to prove the authority of Granger to receive the
money, that the written evidence or order must be produced,
and that the declarations of the said Douglas were inadmissi-
ble. The court admitted the evidence. It did not appear
that said order in writing had been lost or destroyed, or that
it was not left with the lawyer in San Francisco.

The defendant requested the court to charge the jury:—
1st, that the action being brought on a joint contract, made
by the said Chapin and his copartner or copartners, and this
appearing by the declaration, and the other contracting party
or parties being omitted, the action could not be sustained
against the said Chapin alone: and 2d, that if the written
contract admitted in evidence is a contract made by said
Chapin alone, and not by said Chapin and his copartner or

copartners, that it does not sustain the allegations in the declaration, which sets forth a joint contract, made by a firm or copartnership, and therefore that their verdict must be for the defendant. The court on this point charged the jury as follows: "I shall decline giving you the instruction thus prayed for. The defendant has not seen fit to plead in abatement, or demur, when he might have done so; and will still have an opportunity, if your verdict should be against him, of raising the questions thus submitted, on a motion in arrest of judgment. Besides, in relation to this matter of whether there were or were not other partners, how many of them there were, if any, and who they were, both parties have left us in the dark. The plaintiff has not moved to insert their names, as he might have done; the defendant has not shown the court by affidavit that there were such partners, as it was competent for him to do, and enable the court to bring them in and make them parties to the action; nor has there been any evidence offered on either side in relation to them. It is incidentally in evidence, that Mr. Chapin said that he wished to consult his partners; but whether partners in this transaction, or partners generally, does not appear. Nor does it appear but that the partnership was a limited one, in which the defendant was the general partner. In such case, the action must be against the general partner only. I therefore instruct you that you may dismiss the subject of a want of proper parties, entirely from your consideration."

The plaintiff claimed that the defendant had broken his contract in neglecting to furnish board for the said Douglas, and that she was entitled to recover for said board upon the common counts. He further claimed that by the contract, construed in connection with the custom in such cases, the defendant was bound to furnish both said Douglas and his assistants with board on the steamers; and claimed to recover for the board of said Chase while he was acting as assistant. The defendant, having been called as a witness, admitted that said Douglas had been previously in his employ, and that a hiring for a given sum was usually understood to mean with board. His counsel denied that such was the

construction of the contract, and resisted the claim.    On this point the court charged the jury that the reasonable construction of the contract, upon the facts admitted in relation to the custom in such cases, was as the plaintiff claimed.

The plaintiff claimed that by the contract the wages were payable at the end of each month.    The defendant insisted that such was not the meaning of the contract.    On this point the court charged the jury, that by the contract the wages were due at the end of each month; and that if they found for the plaintiff, they might compute the interest on the amount found due for each month's labor from the end of the month.

The court further instructed the jury, that upon the evidence there could be no recovery on either of the special counts of the declaration, and that if they found a verdict for the plaintiff at all, it must be on the common counts; that if they found from the evidence that there was a substantial employment of the said Douglas under the contract for the whole period of six months, or an actual employment until after the boats were attached, and that after that, and after his actual employment on the boats ceased, he remained there with the knowledge of the defendant, and at his request, or that of Mr. Green, awaiting the arrival of Capt. Le Fevre, and ready and willing to be set at work, and the defendant when requested to release him from said contract, declined to do so, and desired him to await the arrival of Capt. Le Fevre, and that while so waiting, without interfering with his readiness to perform the contract, or abandoning it, he sought temporary employment, under the pressure of necessity, to procure the means to sustain himself there; that the plaintiff was entitled to recover under the common counts for the time said Douglas was actually employed, and the time he so remained there awaiting employment, according to the terms and stipulations of the contract, deducting all payments, and also all sums received for such temporary labor.    And that if the defendant or his agents neglected to provide him, or his assistant when reasonably employed by him, with board, either when in actual employment on board

the boats, or when so waiting employment thereon, and he was compelled to expend money for their board, the plaintiff was also entitled to recover the amount actually and reasonably expended therefor, under the same counts.

It was not claimed that said Douglas had forfeited his rights under the contract by reason of a failure to give notice of his intention to withdraw at the end of the six months, or by leaving California before the six months expired.

The jury returned a verdict for the plaintiff for the sum of $1,307.80, and in answer to an inquiry by the court, stated that they found it upon the common counts. The defendant moved in arrest of judgment on the ground that the contracts declared on were joint contracts of the said Chapin and his copartner or copartners, and that the copartner or copartners were not made parties to the action, and because the action was brought against the copartnership named in the writ, by the copartnership name, and not against the individuals composing the copartnership. The defendant also moved for a new trial for error in the rulings and charge of the judge, and on the ground that the verdict was against the evidence; all which motions were reserved for the advice of this court. The motion for a new trial for a verdict against evidence, involving no question of general interest, its details are omitted.

*Fellowes,* in support of the motions.

First. The judgment ought to be arrested for two reasons.

1. The suit is brought against a copartnership, by the copartnership name. "Summon M. W. Chapin & Co., a firm &c." This is the precept. The writ and declaration do not name the parties defendant with certainty and are on this ground fatally defective. "It must be stated with certainty who are the parties to the suit, and therefore a declaration by or against C. D. & Company not being a corporation, is insufficient." 1 Chitty Pl., 256. See also *The King* v. *Harrison,* 8 T. R., 508. *Bentley* v. *Smith,* 3 Caines, 170. *Harvey* v. *Stokes,* Willes, 5. *Tomlinson* v. *Burke,* 5 Halst., 295.

*Kays* v. *Lanier*, 3 Blackf., 322. *Davis* v. *Hubbard*, 4 id., 50. *Scott* v. *Dunlap*, 2 Munf., 349.

2. It appears on the face of the writ and declaration that there was a joint contractor who ought to have been joined, and such joint contractor is omitted. This omission is fatal, and may be taken advantage of by general demurrer, motion in arrest, and after judgment by motion in error. 1st. As to the premises, that a joint contractor is omitted as shown by the writ and declaration. The words "M. W. Chapin & Co., a firm," necessarily imply that more than one person made the contract, and made it jointly. The word "firm" is equivalent to copartnership, and there can be no copartnership without more than one person. The firm or copartnership could not consist of M. W. Chapin alone, for that would be totally inconsistent with the very idea of a copartnership. The pleader was aware of this, and hence he left a blank to be filled with the names of the other partners, our statute permitting him to insert their names in court, thus showing that there was another joint contracting party to be supplied. It is vain to say that the partner omitted might have been a special partner and therefore not to be joined in the action. The court can make no such intendment. Besides, such intendment is contrary to the allegations of the pleader, for the law in regard to special partners does not consider them as parties to the contracts made by the general partner. They are expressly exempted from the liabilities and obligations of the firm. Their capital alone is holden. And besides the business is to be done in the name of the general partner only, and not in the name of a firm. But in this case, the pleader expressly alleges throughout his declaration that all the contracts and promises declared on were made by the firm, whom he has summoned under the name of M. W. Chapin & Co., using the plural number throughout. It is therefore impossible to deny that the pleader shows on the face of his pleadings that other joint contractors existed. 2d. Grant the premises, and the conclusion is inevitable that the omission of such party is fatal to the judgment. So are all the authorities.

In an action on contract, if it appears from the face of the declaration or of any other pleading on the part of the plaintiff, that a person not made defendant in the suit, was a joint contractor with the defendant, and that such person is still living (as he must be presumed to be unless the contrary is alleged,) the non-rejoinder of him as defendant is a good ground of demurrer on motion in arrest, and if judgment be given for the plaintiff may be assigned for error. For, in such case, the pleading of the plaintiff himself shows that he has no right to recover in the suit as it is brought; and as the mistake appears on the record by his own showing, there is no need of the defendant's pleading it. Gould's Pl., chap. 5, sec. 115. See also *Chandler* v. *Parkes*, 3 Esp., 76. *Jaffray* v. *Frebain*, 5 id., 47. *Burgess* v. *Merrill*, 4 Taunt., 468. *Scott* v. *Godwin*, 1 Bos. & Pul., 67.

Second. As to the rulings and charge of the court.

1. The evidence as to Andrew Chase going to California was entirely irrelevant. There was nothing in the contract or declaration to warrant it. It had a tendency to mislead the jury.

2. The ruling of the court as to whether the plaintiff was entitled to recover anything and how much for the services of Chase, was wrong; for by the contract he was to furnish his own help, and this was included in the stipulated wages.

3. The memorandum book admitted by the court was neither an account book, nor a book of entries, of the character intended by the statute.

4. The declaration of Douglas as to where he was going was inadmissible as being the declaration of a party in his own favor.

5. The evidence to prove that Granger had authority to receive the proceeds of the levy on the steamer was not admissible for any purpose, and certainly not for the purpose for which it was admitted. The authority being in writing, it was indispensable that the writing be produced or shown to be lost.

6. The charge of the court that the action could be sus-

tained against Chapin alone, was erroneous, for the reasons given in support of the motion in arrest.

7. The court charged the jury that by the contract the defendant was bound to furnish board for Chase. The contract expressly requires that Douglas should provide his own help, and that he should have his own board, clearly excluding the construction that would require the defendant also to provide board for his help.

8. The court charged the jury that the wages were payable at the end of each month. This is not the proper construction of the contract.

9. The charge of the court that the plaintiff could recover according to the stipulations of the contract, for the whole time he remained in California, even after the boats were sold, is wrong. He was not to be employed upon any boat but those. After they were sold there can be no pretence that he was rendering services under the contract, for which a recovery can be had upon the common counts, according to the contract price and terms.

10. There was no proof that the contract was terminated, and therefore there could be no recovery on the common counts at all; unless it be said the sale of the boats terminated the contract. If it did, then certainly the plaintiff is not entitled to recover for waiting in California two months or more after that, and the verdict is excessive.

Third. The verdict is against the evidence, and manifestly so as to the amount of damages.

*Goodman* and *Hubbard,* contra.

1. The motion in arrest can not prevail. By our statute, when a suit is brought against a copartnership the defendants may be described by the copartnership name. Rev. Stat., chap. 1, sec. 51. The writ can be amended by the plaintiff in court by adding the names of the several persons who compose the firm. If it is not amended, judgment can be rendered against the copartnership, and execution be issued, which can be levied only upon the copartnership property. Rev. Stat., chap. 1, sec. 184.

But this suit is brought against "M. W. Chapin & Co., a firm consisting of Merrick W. Chapin." Here Chapin is sued by the very name used by him in signing the contract, and in his ordinary business. He alone composed the firm.

2. If any other person was a member of the firm the defendant could have taken advantage of it only by a plea in abatement, unless it appears by the declaration that some other person ought to have been made defendant who is still living. 1 Chitty Pl., 29. *Cabell* v. *Vaughan*, 1 Saund., 291, B. note, 4. 5 Burr., 2611. *Johnson* v. *Ransom*, 24 Conn., 531. The declaration here does not show that there were any other parties and that they are still living. It expressly states that the firm consisted of M. W. Chapin.

3. The court will not grant a new trial for a verdict against evidence unless it is manifestly and palpably against the weight of evidence. *Palmer* v. *Hyde*, 4 Conn., 426. *Bulkley* v. *Waterman*, 13 Conn., 328; and when it is manifest that injustice has been done. *Lafflin* v. *Pomeroy*, 11 Conn., 440. The question is not whether the court would have found as the jury did, but whether the evidence is such as will justify the jury in finding as they have done. *Bishop* v. *Perkins*, 19 Conn., 300. *Clark* v. *Whitaker*, id., 319.

4. The evidence offered by the plaintiff and admitted by the court was proper and admissible. The objections made to the evidence were, 1st. To the memoranda made in a book by Mr. Douglas. These were clearly admissible under the statute. Stat., Comp. 1854, p. 94. 2d. To the declaration of Douglas to Granger as to his intention to go to Sacramento to go on board the boats. This was clearly admissible as a part of the *res gestæ*. 3d. The testimony of Granger as to his receiving the money for Douglas. It is claimed that the written order should have been produced. But the fact of his getting the money, and the amount so received were all that was important. His authority was of no consequence. If it were, his authority as between him and Douglas was merely by parol. The written order was a mere authority to the attorney to pay it over to him. 4th. The evidence with regard to Douglas taking Chase to Cali-

fornia, as assistant engineer. He was by the contract to procure competent help, and was not bound to run the risk of not finding it in California. The evidence was clearly admissible as going to show his readiness and willingness to perform the contract. 5th. The evidence as to the value of Chase's services in California. This was admissible for the consideration of the jury, as they were to say how much on the whole should be allowed for Douglas' services; and the services of Chase, he being employed by Douglas, were in effect the services of Douglas himself.

5. There is no error in the charge of the judge to the jury. If there is, the court will not grant a new trial when it is apparent that the verdict must be the same on a new trial. *Sheldon* v. *School District of Suffield*, 24 Conn., 88. *Wilcox* v. *Roath*, 12 Conn., 550. Or unless it appears that injustice was or might have been done on the former trial. *Brown* v. *Keach*, 24 Conn., 73. *Kelsey* v. *Hanmer*, 18 id., 311. *Haight* v. *Turner*, 21 id., 593. *Branch* v. *Doane*, 17 id., 402. *Johnson* v. *Blackman*, 11 id., 342. 1 Saund., 154, n. 1.

HINMAN, J. The defendant in this case moves in arrest for the insufficiency of the declaration, and there is also a motion for a new trial, founded on exceptions to the charge of the court, and to the rulings of the court in respect to the admission of evidence; and also on the ground that the verdict is manifestly against the evidence in the case.

The motion in arrest is founded upon the supposition that the suit is brought against a copartnership by the copartnership name, without naming with sufficient certainty the parties who compose the copartnership; and also on the ground that it appears upon the face of the writ and declaration, that there was a joint contractor with the defendant, and as the name of such joint contractor is omitted, the declaration is fatally defective. We think however that there is no foundation in fact on which to base either of these claims. In the writ the officer is commanded to attach the goods or estate of "M. W. Chapin & Co., a firm doing business in said Hartford, and consisting of Merrick W. Chapin,

and them summon, &c." And in the original it appears that a blank was left after the name of the defendant, Chapin, of sufficient space in which to insert other names, had there been any other joint contractors with him. We mention this circumstance, because counsel for the defendant rely upon it as having some influence in giving a construction to the words quoted. But as the meaning of these words appears to us to be clear and unambiguous, we can not lay any stress upon this fact. The contract out of which the plaintiff's claim originated, was signed on the part of the defendant, " M. W. Chapin & Co.," and at the time the writ and declaration issued, the plaintiff might have been in doubt whether or not there were other members of the firm, as it is called, and left the blank for the purpose of inserting other names, if it should be found that there were such members; as it would be competent to do under our statute in respect to bringing suits for or against private copartnerships. But it is not now pretended that any other person than the defendant, Chapin, was interested with him in the subject-matter of this suit, unless, indeed, the contrary appears upon the face of the writ and declaration. But the words of the writ are very explicit. They say, as plainly as it is possible to say, that the firm of M. W. Chapin & Co. consists of Merrick W. Chapin, and the process is served on him alone. He answers to it, and takes no exception by plea in abatement for the want of proper parties, but relies solely upon the fact that he is described as a firm, and is spoken of in the process in the plural, rather than with strict grammatical accuracy. We are satisfied that the declaration is well enough.

The claim of the plaintiff was for the work and labor of her husband under a contract with the defendant, and for moneys expended by him for board, while he was in the service of the defendant in California, or was there ready to perform such services according to the terms of the contract, but was prevented from so doing in consequence of the neglect of the defendant to furnish the stipulated employment. By the contract the deceased agreed to go to California, and take charge of the engine department of one of the defend-

Douglas *v*. Chapin.

ant's steamboats, furnishing all his help for so doing, for which service he was to be paid a monthly salary, and was to be boarded on board the steamer. The plaintiff was permitted to testify that her husband went to California for this purpose, and took with him Andrew W. Chase, a competent mechanic and engineer, to assist him ; and it is said that the evidence as to Chase going to California is irrelevant, and its tendency was to mislead. It appears to us, however, that it tended to show that the deceased performed his contract. The contract, upon its face, contemplated that assistance would be needed. The deceased could not personally perform all the duties which were required of him under the contract; and it seems clear that it was proper for him to take on with him such assistants as he would need. It is said that he might have procured such assistants in California. This may be so, but it proves nothing. We think his executrix had a right to show that he was prepared to discharge all the duties required of him ; and where he procured his assistants is of no importance; he had a right to get them where he pleased, but the fact that he had all such assistants as he might require is important, and being so, the plaintiff had a right to show it.

The court left it to the jury to say, upon the evidence, whether the deceased conducted reasonably in taking out said Chase with him, and whether, upon all the facts in the case, anything, and how much, was to be recovered for his services. This is objected to on the ground that as the contract was for a stipulated sum per month, for certain specified services, he furnishing his own assistants, it was not proper to submit to the jury whether he was entitled to compensation for any particular part or portion of those services. If by this is meant that it would be improper to submit to the jury whether the plaintiff was entitled to anything more than the stipulated compensation for the whole service, no doubt the claim would be well founded, if there was any foundation in fact for it to rest upon. But we suppose nothing more was meant by this than that if they should find the plaintiff to be entitled to anything for his whole service under the contract,

including, as it of course would include, the service of Chase, they would find upon the whole evidence what she was entitled to recover, and as a part of the service for which she might be entitled to recover was rendered by Chase, they would say whether anything, and how much, she would be entitled to for the service rendered by him. We do not see, therefore, that this part of the charge is open to objection on the part of the defendant.

The book of the deceased, containing entries in his handwriting, in respect to his transactions under this contract, was received in evidence, though objected to by the defendant. But the statute passed in 1850, (Statutes, ed. 1854, p. 94,) provides that in suits by or against the representatives of deceased persons, the entries and written memoranda of the deceased, relevant to the matters in issue, may be received as evidence, subject, in regard to weight and credit, to the rules under which the testimony of parties and other interested evidence is received. We do not see how, under this statute, the entries relevant to the performance of the contract on the part of the deceased could have been excluded.

When the deceased arrived at San Francisco, the defendant's boats were up the river, opposite Sacramento; and he thereupon left San Francisco, and said to the witness "that he was going up the river to Sacramento, to go on board the boats." This is objected to as the declaration of the party in his own favor. But it was manifestly a part of the *res gestæ*, and as such admissible in evidence.

The deceased was a party to certain proceedings in California, under which one of the defendant's boats was sold, and the proceeds applied to the payment of the debts of the parties for whose benefit the boat was sold; and the plaintiff, for the purpose of showing that the proceeds which came to her, were less than the defendant claimed them to be, and what they really were, and how much should be allowed the defendant therefor, was allowed to prove by the agent whom the deceased authorized to receive said proceeds, that, by virtue of a written order from the deceased on the lawyer

Douglas v. Chapin.

having charge of the case, he settled with the lawyer, and received a certain amount, which he forwarded. We see no objection to this ruling. The order was probably in the hands of the lawyer to whom it was addressed. And the agent to receive the money was not appointed by a power of attorney. So far as the case shows we do not see, therefore, how his agency could be shown in any other way than by parol. It was a mere question as to how much of the defendant's debt had been paid, and the agent who received it would seem to be a very proper witness to prove his agency, and what he received under it.

The request to charge the jury that the action co ld not be sustained against the defendant alone, is founded upon the idea that the writ and declaration, and the defendant's signature to the contract, and the contract itself, show that there was some other person or persons interested with the defendant in the transaction. This claim has, we think, been sufficiently answered in what has been said under the motion in arrest. If the objection does not appear upon the face of the declaration, as we have said it does not, it was then for the defendant to plead in abatement the nonjoinder of parties who ought to have been joined; and not having done so, he can not take any advantage of any such fact, even if it exists, of which we can know nothing.

We think the charge of the court, in respect to the money paid by the deceased for his and his assistant's board, was correct. By the contract, the defendant agreed to pay a stipulated sum per month, " and board, on board said steamer, for the services performed as heretofore expressed." Under this language, the defendant takes no exception to the charge in respect to the board of the deceased, but claims that the charge was wrong in respect to the board of the assistant. But as the contract contemplated that the service was to be performed by the aid of such assistants as should be necessary, and provided that the defendant should furnish such assistants, we think when the contract provided that, in addition to the stipulated compensation, he was to be furnished with " board on board the steamer," it was meant that he

should not only be furnished his own board, but board also for such assistants as might be necessary to aid him in performing the service.   And in the language of the court below, we think, "that if the defendant or his agents neglected to provide him, or his assistant, when reasonably employed by him, with board, either when in actual employment on board the boats, or when so waiting employment thereon, and he was compelled to expend money for their board, the plaintiff was entitled to recover the amount actually and reasonably expended therefor."

The defendant claims that the court below was wrong in charging the jury that the contract bound the defendant to pay for the service at the end of each month, and that the sums for service, being due at the end of each month, if they found for the plaintiff, they might compute the interest on the amount found due for each month's labor, from the end of each month.   The words of the contract on this part of the case are, "For the faithful performance of the aforesaid duties, as specified, we, the said M. W. Chapin & Co., on the second part, agree to pay the said Henry Douglas, of the first part, the sum of two hundred and fifty dollars per month," and then, at the end of the contract, this language is used: "It is expected the services will be paid at the end of each month."   We do not see how the stipulation for monthly payments for the services could be made any clearer than this language makes it.

The contract contemplated a years' service, determinable, however, at the end of six months, at the pleasure of either party, on his giving the other party one month's notice before the expiration of said six months.   And the steamers, on board which it was contemplated the service would be performed, were both sold under legal process, and passed into other hands, before the expiration of six months, and the deceased, at intervals, for short periods, was, from time to time, employed on board one of the steamers for the new owners.   And the defendant claimed that the deceased was not entitled to anything on the contract, for work and labor after the boats were sold and he entered into the new em-

ployment. But it was also a part of the case, and, under the charge of the court, the jury must have found, that, after the boats were attached, he remained in California, at the request of the defendant, awaiting the arrival of the master of one of the boats, ready and willing to be set at work; and the defendant, being requested to release him from said contract, or to permit him to come home, declined to do so, and desired him to await the arrival of the said master; and while so waiting, he, without abandoning the contract, or interfering with his readiness to perform it, to procure the means to sustain himself there, entered into this new employment, and whatever was earned by him therein was allowed to the defendant as part payment under the contract. Under such circumstances, we think it quite obvious that the rule adopted by the court below was the only one which would do justice to the parties.

The point that there was no proof that the contract was terminated, and therefore there could be no recovery on the common counts, was not made in the superior court, and can not therefore be considered now. On the contrary, the motion states that it was not claimed that said Douglas had forfeited his rights under said contract by reason of a failure to give notice, or because he left California before the six months expired.

On the motion for a new trial on the ground that the verdict is against the evidence in the cause, as every presumption is in favor of the verdict of the jury, it is of course incumbent upon the defendant to show that it is clearly and manifestly contrary to the evidence, or the court will not interfere with it. No doubt there is ground to apprehend that the damages assessed by the jury are greater than we should have given, but this would depend upon how much the deceased expended in California to maintain himself and his assistant there, while waiting for employment in the business contemplated by the contract, as well as how much he received from his employment by other parties while he was in this situation. In looking at the evidence, we find nothing that will enable us to state the account with that

precision and accuracy which we think ought to be done, in order to show that the jury manifestly erred in rendering too large a verdict. As, therefore, we can not determine, with any precision, whether the verdict is too large, and, if excessive, to what extent, we do not feel authorized to grant a new trial on this ground.

On the whole case therefore we advise the superior court not to grant a new trial.

In this opinion the other judges concurred.

New trial not advised.