THE STATE OF CONNECTICUT *vs.* JOSEPH JOURNEY.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, JS.

Argued June 10th—decided July 12th, 1932.

*David Goldstein* and *John T. Cullinan,* with whom, on the brief, were *Joseph J. Devine* and *John P. Flanagan,* for the appellant (the accused).

*William H. Comley,* State's Attorney, with whom, on the brief, was *Lorin W. Willis,* Assistant State's Attorney, for the appellee (the State).

BANKS, J.  The accused appeals from the denial of his motion to set aside the verdict, the refusal of the court to charge as requested by him, and a single ruling on evidence.  Upon the evidence offered by the State the jury might reasonably have found the following facts: On March 10th, 1932, at about nine-thirty in the morning, a fire was discovered in an old barn upon an abandoned property in the town of Easton known as the old Logan place.  When the firemen arrived the barn, except for the larger timbers, was practically destroyed.  The firemen discovered upon a pile of half-burned hay within the ruins of the barn the body of a human being which was burned beyond recognition.  A small portion of the vest and trousers on the front of the body which had been pressed against the hay had not been burned, and in the vest was found a post card addressed to Frank Buda.  A medical examination of the body disclosed that death had not been caused by the flames but by gun shot wounds.  Two fragments of lead which looked like buckshot were taken from the neck.  They had entered the neck just below the ear and back of the angle of the jaw.  They caused death by fracturing the upper cervical verte-

bræ and the base of the skull. Under the hay, some five or six feet from the body, were found the charred remains of a double barreled shot gun containing two shells which had been discharged by the firing of this gun. Frank Buda had left his home in Bridgeport about seven o'clock on the morning of the fire, stating that he was going to work for the accused at the latter's place in Bridgeport known as "Journey's Inn," and shortly after that hour was seen walking in that general direction. He wore clothing some of which was later found beneath the dead body in the barn, and had in his pocket the post card which had been received by him at his home. The accused owned a small black coupe automobile on either side of which in gilt letters were the words "Journey's Inn Bridgeport." At about seven-forty-five on the morning of the fire, the accused, driving the car thus marked and with a passenger seated beside him, bought four gallons of gasoline at a filling station upon a road which was upon the direct route from Journey's Inn to the old Logan place which was fourteen or fifteen miles distant. Shortly thereafter the accused was seen by several witnesses driving his car with a passenger in the direction of Easton center and the old Logan place. Two of these witnesses were school boys who identified the accused as the driver of the car, and testified that they saw in the car between him and the passenger what appeared to be a double barreled shot gun. About eight-thirty on the same morning the accused was seen driving along in a direction away from the Logan place, and about half an hour later was again seen, still alone, but this time proceeding toward the Logan place. The woman who discovered the fire, saw a small coupe driving away from the barn a few minutes before nine-thirty and in a moment saw smoke and flames coming from the building. About ten-

thirty the accused was seen driving alone on the road leading toward Bridgeport. The accused, in the latter part of November, 1931, owned a double barreled hammerless shot gun, but no gun was found in his home after the fire. The accused was questioned on the morning following the fire, but denied all knowledge of the crime, and denied that his car had left the garage on the morning of the fire. On March 13th he was again questioned and was told of the number of witnesses who had seen him in the vicinity of Easton on the morning of March 10th, and then admitted to a state policeman and a constable of the town of Easton that he had killed Buda, but had no good reason for doing so.

Upon the trial the accused, upon his direct examination, after formal inquiry as to his name, address and business, was asked but two questions—first, whether he had anything to do directly or indirectly with the killing of the man who was found dead in the barn in Easton, and second, whether he had ever told the state policeman that he had killed that man, both of which he answered in the negative. Upon cross-examination he testified that he got up that morning a little after seven but did not leave the Inn until about ten minutes of eleven. His wife testified that he did not get up that morning until nine o'clock, and another witness for the defense testified that he saw the accused in his yard a few minutes after eight o'clock, but was not sure whether that was the morning of March 10th or March 11th. The accused's defense of an alibi was weak and inconclusive, and the jury were amply justified in believing the testimony of the State's witnesses as to his movements on the morning of the commission of the crime. The State produced no witness who saw the accused enter or leave the barn, and no evidence of any motive he may have

had for killing Buda. The defense also points out some claimed contradiction between the testimony of the state policeman and the constable, which it is claimed weakened its force as evidence of a confession by the accused. But giving the accused the benefit of the greatest weight to be accorded to these claimed frailties in the State's proof, a careful examination of all of the evidence in the case discloses proof by an overwhelming weight of the evidence fully warranting a conclusion beyond a reasonable doubt that the accused shot Buda and then set fire to the barn to conceal the evidence of his crime.

There was no evidence in the case from which the jury could have found facts which would mitigate or extenuate the crime or furnish legal justification or excuse for it, and in the absence of such evidence the jury could reasonably have found that it was committed with malice aforethought and that the accused was guilty of murder. Counsel for the accused earnestly contend that the proof of the State did not establish beyond a reasonable doubt that the act was wilful, deliberate and premeditated, and that the jury could not, therefore, have reasonably found the accused guilty of murder in the first degree. We think that this contention is well founded. A careful examination of all the evidence fails to disclose any facts which would justify a conclusion beyond a reasonable doubt that the shooting of Buda was premeditated. There was no evidence that the relations between Buda and the accused were other than friendly and none of any motive for the killing. While such evidence is not a necessary part of the State's case, its presence in the case might have furnished proof of premeditation which is now lacking. The fact that the accused and Buda were seen driving toward the barn with a shot gun in the car, would not justify the jury in finding

beyond a reasonable doubt a deliberate intention on the part of the accused to shoot Buda, nor would the fact that Buda was found with a shot gun wound in the neck and that the barn was set on fire in an apparent effort to conceal the crime. The only other evidence which might be claimed to support a charge that the killing was wilful and premeditated was the confession of the accused. The confession as given in the testimony of Officer Stanton amounted to nothing more than this: That, after being told of the witnesses who had seen him on the road leading toward the barn, the accused was asked if he wanted to tell the truth now and answered "Yes." He was asked, "Are you guilty, Joe," and answered "Yes." He was then asked why he did it and replied, "I had no reason to do it." This of course was far from being a confession of a wilful, deliberate and premeditated killing, and was not a confession of any conduct or action on his part from which premeditation could be inferred. It is quite possible, however, that the jury may have interpreted it as a confession by the accused that he was guilty as charged, and it may well have been the determinative factor resulting in their verdict as rendered. Be that as it may, the facts proven by the State, though abundantly justifying a verdict of murder in the second degree, were insufficient to warrant a conclusion beyond a reasonable doubt that the killing was wilful, deliberate and premeditated, and consequently insufficient to justify a verdict of murder in the first degree.

The accused requested the court to charge the jury that his mere presence in the vicinity when the crime was committed was not sufficient to justify a verdict of guilty, that there was no direct evidence that he ever entered the barn, and that a theory could not be established by circumstantial evidence unless the cir-

cumstances were inconsistent with any other rational theory. The court did charge that the mere presence of the accused in the vicinity was not sufficient to justify a conclusion of his guilt, and that the proof of the State must exclude from the minds of the triers any reasonable hypothesis or supposition of the innocence of the accused, and that if the facts which they found proven were consistent with such supposition they should acquit. It also charged, fully and correctly, as to the distinction between direct and circumstantial evidence and the weight to be given to each.

The accused requested the court to charge that the State had offered no proof of any motive for the killing, and that such lack of motive should be taken into consideration by the jury. The court correctly charged that, since crimes are generally committed from some motive, evidence of the existence or nonexistence of a motive was an important factor in the inquiry as to the guilt or innocence of the accused, but that the State was under no obligation to prove a motive, much less a sufficient or adequate one.

In other requests to charge the accused invited the court to comment upon the claimed contradictory character of the testimony of the state policeman and the constable as to the alleged confession made in their presence, also as to the weight to be given to the testimony of the two boys who testified that they saw the shot gun in the automobile of the accused. The trial court is not bound to discuss in its charge the evidence of any particular witness or witnesses, and the extent to which it shall comment upon the evidence is largely a matter within its discretion.

The charge of the court fairly and impartially presented to the jury the claims of both the State and the accused, and in none of the respects complained of did it fail to safeguard the rights of the accused.

The widow of Buda was asked by the State's Attorney upon her direct examination what her husband had said when he left the house that morning, and, over the objection of the accused, was permitted to testify that he said he was going to work for Journey. The existence of a plan or intention to do a thing is relevant to show that the act was probably done as planned. The plan or intention, being a condition of mind, may be evidenced, under an exception to the hearsay rule, by the person's own statement as to its existence. A declaration indicating a present intention to do a particular act in the immediate future, made in apparent good faith and not for self-serving purposes, is admissible to prove that the act was in fact performed. It is admissible, not as a part of the *res gestae,* but as a fact relevant to a fact in issue. *Dunham* v. *Cox,* 81 Conn. 268, 272, 70 Atl. 1033; *State* v. *Kelly,* 77 Conn. 266, 58 Atl. 705; *State* v. *Smith,* 49 Conn. 376; *Mutual Life Ins. Co.* v. *Hillmon,* 145 U. S. 285, 12 Sup. Ct. 909; *Hunter* v. *State,* 40 N. J. L. 495; *Commonwealth* v. *Trefethen,* 157 Mass. 180, 31 N. E. 961; 3 Wigmore, Evidence (2d Ed.) § 1725. A fact in issue in the case was whether Buda was in the company of the accused on the morning in question. His plan or intention to go to his house was a fact relevant to a fact in issue, and his own declaration that such was his intention was admissible in proof of such relevant fact.

There is error and a new trial is ordered.

In this opinion the other judges concurred.