RUTH SHANN KILPATRICK *vs.* GARFIELD THOMAS KILPATRICK.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued June 3d—decided July 22d, 1937.

*H. Allen Barton,* with whom was *William L. Tierney,* for the appellant (plaintiff).

*Lorin W. Willis,* for the appellee (defendant).

BROWN, J. The plaintiff appeals from the judgment of the court denying her petition for a divorce upon the ground of intolerable cruelty and for alimony, claiming errors as to the finding and certain rulings upon evidence. The finding of the trial court fails wholly to support the plaintiff's claim for a divorce. She seeks certain corrections in and many additions to it. Most of her claims for correction have their sole support in her own testimony; many are directly contradicted by other testimony; and the trial court's failure to find others no doubt rests on the fact, stated in its memorandum of decision, that there was little in her testimony to which it could give credence. The few admitted or undisputed facts which we might add to the finding would be insufficient materially to affect the result reached by the trial court. Its conclusion that the plaintiff was not entitled to a divorce

was the only one it could reasonably reach upon the facts found by it, with such additions as we could make.

The court did not commit reversible error in striking out the plaintiff's testimony to the effect that she was bruised all over her back resulting in two days in bed. It was the plaintiff's testimony that the defendant shoved her against the mantel over the fireplace, resulting in these injuries. The defendant categorically denied that any such incident ever occurred. Since the court failed to find as the plaintiff requested, that the defendant did push her against the mantel, its exclusion of the plaintiff's testimony of bruises claimed to have been received thereby becomes of no consequence.

The court permitted counsel for the defendant on cross-examination of the plaintiff to elicit that she had been through three divorce trials against her former husband, two in New Jersey, the first on the ground of cruelty and the second on the ground of adultery, both of which petitions were denied, and the third in Reno, Nevada, where she obtained a decree; that the defendant financed the prosecution of all three actions; suggested and paid for the plaintiff's excursion to Reno; went there himself while the plaintiff was there; and subsequently motored her to California some months before their marriage. In admitting this evidence the court overruled the plaintiff's contention that it was irrelevant. The evidence was admitted as bearing upon the extent to which the conduct of the defendant would cause suffering on the part of the plaintiff. Intolerable cruelty has a subjective as well as an objective significance. There must not only be proof of acts of cruelty on the part of the offending party but proof that in their cumulative effect upon the other party they are intolerable in the sense of

rendering the continuance of the marital relation unbearable. *VanGuilder* v. *VanGuilder*, 100 Conn. 1, 3, 122 Atl. 719. As her case was almost wholly predicated upon conduct of the defendant not constituting physical abuse, the plaintiff's sensibility to suffering from it might have been a question of great importance in determining whether that conduct amounted to intolerable cruelty. We cannot find error in the ruling of the trial court. That this evidence may have been equally revealing as to the defendant's character did not affect its admissibility for the purpose claimed. The plaintiff made the further objection to the question as to whether cruelty was the basis of the first action brought, on the ground that this could only be proved by the court record. Such formal proof of this fundamental fact lying fully within the knowledge of the plaintiff as petitioner participating in the case in question, was not essential, and the objection was properly overruled. *Ezzo* v. *Geremiah*, 107 Conn. 670, 678, 142 Atl. 461.

Upon the issue of the plaintiff's sensibilities and credibility, the defendant offered in evidence the opinion dismissing her petition for divorce from her former husband on the ground of adultery, in so far as the New Jersey chancellor therein recited that he placed little if any reliance upon the plaintiff's testimony. According to the finding the court admitted this evidence and the plaintiff duly excepted. This she claims constituted harmful error. While not included in the finding, it appears from the evidence printed in the record to secure corrections of the finding, that shortly afterward, climaxing further colloquy concerning it, this evidence was in fact excluded by the court and an exception noted for the defendant. Although it is true that generally the correctness of rulings made in the course of the trial are to be determined upon the

basis of the finding alone and we cannot supplement it by recourse to evidence printed for the purpose above referred to, "when, however, an appellant fails to cause to be included in the finding matter which is relevant to a claim of error he makes and that matter appears in the transcript of evidence he has brought before us and asked us to examine, 'we must in common fairness be at liberty to use information thus acquired in supplementing a manifestly incomplete finding.' *Friedler* v. *Hekeler*, 96 Conn. 29, 34, 112 Atl. 651." *Finnegan* v. *LaFontaine*, 122 Conn. 561, 565, 191 Atl. 337. Since the application of this principle reveals that this evidence instead of having been admitted was in fact excluded, no basis remains for the plaintiff's claim.

The remaining assignments of error relate to the introduction of evidence claimed to have been procured through the use of a mechanical device called a speak-o-phone. The defendant offered evidence of this nature in rebuttal through his witness Naylor, for the purpose as is suggested in the plaintiff's brief, of showing that Mrs. Poole who had testified as a witness for the plaintiff, had secretly discussed the case with the defendant in a manner which indicated her to be amenable to the suggestions of whichever side sought to enlist her services, thus raising an inference against her credibility. It appeared in evidence that on an occasion when Mrs. Poole called on the defendant at his home, Naylor had installed in the library where she and the defendant conversed together, a microphone by means of which what was said was electrically transmitted by wire to a machine in an adjoining room attended by Naylor listening-in with earphones, which machine accurately recorded on metal discs the words audibly spoken in the library. The evidence also showed that a transcript made by the

witness Fishkind, a stenographer, of so much of the conversation as had been thus recorded was a correct transcript; that Naylor had brief notes of certain of the other parts of the conversation which he had heard by the ear-phones but which were not loud enough to register on the metal discs; and that the transcript and notes together constituted a complete record of the entire conversation that was audible through the microphone.

In inquiring of Naylor as to certain words spoken by Mrs. Poole during the conversation relating to the point in issue, the defendant claimed his testimony of what he had heard through the ear-phones upon his recollection, as refreshed by reference to the transcript and his own notes made at the time. The plaintiff objected because: (1) in so far as the transcript is concerned, it was not made by the witness; (2) the words testified to were heard by means of this mechanical device and not by the witness while in the immediate presence of Mrs. Poole; and (3) the discs themselves were the best evidence. The court properly admitted this testimony. Since the transcript did in fact stimulate the witness' memory, that it was made by another was of no consequence. *Neff* v. *Neff*, 96 Conn. 273, 278, 114 Atl. 126; *State* v. *Dougherty*, 86 N. J. L. 525, 546, 93 Atl. 98, 106. In view of the uncontradicted testimony of the witness that the words testified to were those of Mrs. Poole who was in the room where the microphone was located and that it transmitted her words, the plaintiff's second objection is without merit. The intervention of this mechanical means of audition no more rendered the words spoken inadmissible than would that of a telephone under similar circumstances. *Commonwealth* v. *Wakelin*, 230 Mass. 567, 574, 120 N. E. 209, 212; *Boyne City, G. & A. R. Co.* v. *Anderson*, 146 Mich. 328, 330, 109

N. W. 429, 430; *Commonwealth* v. *Clark*, 123 Pa. Sup. 277, 187 Atl. 237; 2 Wigmore, Evidence (2d Ed.) § 795, p. 103; 3 Wharton, Criminal Evidence (11th Ed.) § 1430. The plaintiff's contention that under the best evidence rule, the discs themselves were the only proper evidence of this conversation apparently was not seriously urged, for shortly after when the defendant did offer these discs in evidence the plaintiff objected because they were not complete. Obviously the fact that a part of the conversation which Naylor heard over the ear-phones was at the same time mechanically recorded, did not affect the admissibility of his testimony of what he in fact heard. However, the court did not err in subsequently admitting the discs themselves as exhibits, for whatever corroboration they might afford.

The court properly excluded questions by the plaintiff on cross-examination of Naylor, seeking to elicit whether he had obtained speak-o-phone records of any conversations of the plaintiff or of other of her witnesses. This was in no respect pertinent to the direct examination. The court did not err in admitting in evidence through the witness Fishkind his transcript prepared from the speak-o-phone discs. Since the audibly spoken words of Mrs. Poole were accurately recorded on these discs and it was a correct transcript thereof which the defendant offered in evidence, the only question is whether resort to the transcript as a means of making the evidence available to the court, in place of an actual audition of the discs upon the reproducing machine, was permissible. When the safeguards as to accuracy are fully met as they were here, and the discs themselves are laid in evidence to afford the adverse party opportunity to determine the correctness of the transcript, no good reason appears for excluding such evidence. And the possible lack of available appa-

ratus for the sound reproduction from the discs in court, and more particularly the probable necessity of resort to repeated reproductions thereby in ascertaining the exact words recorded, on the score of convenience and facility of trial procedure, afford cogent grounds for admitting it. The utilization of such evidence does not differ essentially in principle from that made of an accountant's testimony of the result of his study of complicated book items where the books themselves are in evidence which we permitted in *Elmira Roofing Co.* v. *Gould,* 71 Conn. 629, 631, 42 Atl. 1002; or from the generally permitted use of an interpreter for a witness who though of foreign tongue is able to speak broken English. See 2 Wigmore, Evidence (2d Ed.) § 811 and following. Such a transcript was admitted in evidence in *State* v. *Minneapolis Milk Co.,* 124 Minn. 34, 44, 144 N. W. 417, 420. We conclude therefore that although the court might have resorted to the use of proper sound reproducing apparatus to receive in evidence the words upon these discs, as was done in *Commonwealth* v. *Clark,* supra, it could also properly resort to the use of the transcript thereof as it did.

There is no error.

In this opinion the other judges concurred.