STATE OF CONNECTICUT *v.* GEORGE PERELLI.

STATE OF CONNECTICUT *v.* CAMILLO VENEZIA.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued February 8—decided April 5, 1939.

*Louis Feinmark,* with whom was *Louis Sperandeo,* for the appellants (defendants).

*Samuel E. Hoyt,* state's attorney, and *Abraham S. Ullman,* assistant state's attorney, for the appellee (the state).

JENNINGS, J.  The defendants, Perelli and Venezia, were convicted of killing Armando Salvione.  In their appeal they claim that error was committed in the rulings on evidence, in the charge, and in the arguments of the state's attorneys.  It is necessary to summarize the finding in order to understand the rulings.

The state offered evidence and claimed to have proved the following facts: For two years prior to November, 1934, the deceased had lived with his wife Mary in Bridgeport.  The defendants had frequently visited at the home of the Salviones and their visits had become much more frequent just prior to the date of the murder.  In addition to calling at the house the defendants had frequently called on the telephone and Mary Salvione was familiar with their voices.  She was also well acquainted with the Buick car which

was being used by the accused. At this time the deceased owned a Ford coupe. On November 5th the deceased told his wife that he was going to New Haven with the accused to watch the movements of a man named Conte. On November 6th the accused Venezia called on the telephone and asked Mrs. Salvione for the deceased. In the evening the defendants came to the house and Mrs. Salvione heard Venezia, while Perelli was there, ask her husband if he was ready to go to New Haven. Before leaving for New Haven the deceased informed his wife that he was going to New Haven with the accused to an inn run by Maresca and Perelli at Lighthouse Point. He also said that they had been watching a man named Conte and that he was supposed to drive the car and that Venezia and Perelli were supposed to kill Conte. The deceased left with the defendants in the Buick car and returned to his home about 1 or 2 o'clock the next morning.

On November 7th Perelli called the Salvione home at about 11 o'clock in the morning and asked for the deceased. He was then informed by Mary Salvione that the deceased was not there. Perelli called again about 2.30 in the afternoon and asked for the deceased. Mrs. Salvione answered and later heard her husband talk to Perelli on the telephone and heard her husband say that they were going to meet in New Haven at a park at 6.30 o'clock. Before leaving for New Haven the deceased told his wife that he was going to meet the defendants at Columbus Park in New Haven, that from there they would go to Lighthouse Point, and that he was then going to inform them that he would take no part in the Conte matter. He left his home at 4.30 that afternoon. His body, horribly mutilated, was found the next morning and

there was other evidence connecting the accused with his death.

The defendants offered evidence and claimed to have proved the following facts: They did not go to New Haven with the deceased on November 6th and did not see him on November 7th but were elsewhere. They also attacked the credibility of the state's witnesses and claimed to have proved a motive in the wife of the deceased to bring about his death.

The assignments of error principally stressed by the defendants are based on a series of rulings admitting, over their objection, statements made by the deceased in their absence to or in the presence of his wife relative to his future movements on the fifth, sixth and seventh of November. Some of these were made in answer to telephone calls purporting to be from one of the defendants. The defendants admitted in argument that under *State* v. *Journey,* 115 Conn. 344, 351, 161 Atl. 515, a statement by the deceased that he was going to New Haven, possibly a statement that he was going to New Haven to meet the defendants, would be admissible. *Smith* v. *Firestone Tire & Rubber Co.,* 119 Conn. 483, 490, 177 Atl. 524. They insist, however, that the inclusion of what amounted to a rather extended narrative of a criminal conspiracy on the part of the deceased and the defendants to murder a third person in no way connected with the present case, and who appeared therein in no other way, went far beyond the reason and intent of the rule and hopelessly prejudiced them in the eyes of the jury. The point is well taken. The rule as laid down in the earlier cases justified the admission of testimony of a deceased witness as to his intentions on the ground that it was·part of the res gestae (*Douglas* v. *Chapin,* 26 Conn. 76, 92; *State* v. *Hayden,* 1 Ky. L. Rep. 71; *State* v. *Smith,* 49 Conn. 376, 381) but was restated

in the *Journey* case, page 351, as follows: "A declaration indicating a present intention to do a particular act in the immediate future, made in apparent good faith and not for self-serving purposes, is admissible to prove that the act was in fact performed. It is admissible, not as a part of the *res gestae*, but as a fact relevant to a fact in issue." This is in accordance with the more modern and better reasoned doctrine. 113 A.L.R. 288, note; 3 Wigmore, Evidence (2d Ed.) § 1725. The rule itself is more important than the theory on which it is founded. *State* v. *Farman,* 82 Ore. 211, 161 Pac. 417, Ann. Cas. 1918A, 318. The underlying, essential characteristic of all the numerous cases admitting such evidence (see the A.L.R. note, supra) is that the statement must refer to the intention, design or state of mind of the declarant. Those parts of the statements referring to the acts and intentions, past and present, of the defendants were pure hearsay as to them, made by a person not subject to cross-examination, and are not within the exception to the hearsay rule defined in the *Journey* case.

Applying this rule to the evidence in question, most of the statements made by the deceased to his wife related to his then present intention to go to New Haven to meet the defendants and were admissible. When she was pressed for more detail she testified as follows: "Yes, he said he wouldn't come here any more; that he would tell them he wouldn't have any more to do with it. Q. Is that all he said? A. Well, that is [pause] Did he say what 'it' meant? A. This Conte affair. Q. Suppose you tell us what he said. A. He said that they had been watching Conte, that he was supposed to do the driving of the car and Venezia and Perelli was supposed to do the shooting; so I told him to keep out of it and he promised very faithfully that he would, and that he would tell them

that he wouldn't have anything to do with it." Later the same witness testified that the deceased told her "that they [he and the defendants] were scouting around New Haven and watching Mr. Conte's movements." These statements, in so far as they related to the intentions and actions of the defendants, were inadmissible for the reasons stated. For the same result, reached on a different theory, on similar facts, see *People* v. *Gress,* 107 Cal. 461, 40 Pac. 752. For a similar line of reasoning on slightly different facts, see *State* v. *Beeson,* 155 Iowa 355, 136 N. W. 317, Ann. Cas. 1914D, 1275.

No limitation was placed on this testimony in the charge. In his argument the assistant state's attorney repeated the substance of the inadmissible testimony we have quoted and based upon it the claim of the state that the defendants were motivated to kill the deceased because he told them that he was going to withdraw from the attempt to kill Conte. While some attempt was made by the court, on objection by the defendants, to limit the effect of this argument, this limitation was not brought home to the jury with sufficient clarity to overcome its prejudicial effect. The argument cannot be said to be improper because it was based on the evidence (*State* v. *Schleifer,* 102 Conn. 708, 726, 130 Atl. 184) but seriously aggravated the error committed in admitting the evidence.

A telephone conversation purporting to be with one defendant on November 7th was specifically admitted against both. No ground of admissibility as against Venezia is shown by the record.

While the defendants were in jail, their conversation was carried by dictaphone to a lieutenant of state police. Such part of the conversation as was in Italian was translated by him and the English was dictated by him and written down at the time. He was offered

as a witness by the state and asked to relate the conversation. He was unable to do so without using the memorandum made at the time. While his testimony purported to be that of a recollection refreshed by looking at the memorandum (*Kilpatrick* v. *Kilpatrick*, 123 Conn. 218, 224, 193 Atl. 765) and while the conclusion of the trial court on this point is not ordinarily reviewable (*Henowitz* v. *Rockville Savings Bank*, 118 Conn. 527, 530, 173 Atl. 221), the unmistakable conclusion from all of the evidence in the record is that he simply read the memorandum without having any independent recollection of the content or details of the conversation. The only substantial difference between the written statement and the oral evidence is that in the statement the speaker is designated while it is not clear from the evidence who was speaking. It subsequently developed that the paper from which he read was a copy and that the original was not admissible as past recollection recorded (*Neff* v. *Neff*, 96 Conn. 273, 278, 114 Atl. 126) because, as stated in the ruling, "it contained certain assumptions or versions of the witness Verelli rather than a mere interpretation of the statements made [in Italian] by the accused." The net result of this proceeding was that the account of these conversations received by the jury was both incorrect and highly prejudicial. When the evidence was first offered, the ultimate result was not evident but when the whole situation was clearly before the court the motion to strike out the entire testimony should have been granted. See 4 Connecticut Bar Journal 50; 65 A.L.R. 1478, note.

Practically all of the questions asked of the witness Mary Salvione on cross-examination and excluded concerned sexual offenses and irregularities. The ruling was correct. The questions were asked only to affect the credibility of the witness and were not relevant

for that purpose. *Dore* v. *Babcock,* 74 Conn. 425, 430, 50 Atl. 1016; *Shailer* v. *Bullock,* 78 Conn. 65, 70, 61 Atl. 65. The defendants were refused the right to show that Mrs. Salvione had been convicted of keeping a house of prostitution in Pennsylvania. The rule laid down in *Drazen* v. *New Haven Taxicab Co.,* 95 Conn. 500, 509, 111 Atl. 861, covers this situation. It is that conviction of crimes which may be shown to affect credibility include no crimes whose maximum penalty may be not more than six months in the county jail. General Statutes, §§ 6226, 6232. While the cross-examination of a witness to affect credibility is largely discretionary as to its extent and the period to be covered, the question of relevancy is not. *State* v. *Schleifer,* supra, 714.

The defendants offered in evidence a deed relevant to the question of ownership of real estate by the deceased for the purpose of showing a motive in Mrs. Salvione to commit the murder. It was excluded on the ground "that evidence of a motive to commit a crime on the part of the third party in a situation such as this is not admissible; at least not until after there has been some evidence which directly connects that third party with the crime." The ruling was correct. *State* v. *Long,* 95 Vt. 485, 115 Atl. 734, was a prosecution for murder. The defendant offered evidence of illicit relations between the husband of the murdered woman and another woman for the purpose of showing a motive in the husband to commit the crime. The evidence was excluded. In sustaining the ruling the court said (p. 492): "While it is always competent for a respondent to give evidence tending to show that another committed the crime of which he is charged . . . it is not enough to show merely that another had a motive to commit it. There was no evidence that connected Broadwell [the husband] with the criminal

act itself, nor did the respondent offer to produce such evidence, without which the evidence in question was inadmissible. [Cases cited.] In this respect a motive in another stands like threats by another, which are, standing alone, excluded." See also 1 Wharton, Criminal Evidence (11th Ed.) § 274; *State* v. *Beaudet,* 53 Conn. 536, 4 Atl. 237. In *State* v. *Hawley,* 63 Conn. 47, 27 Atl. 417, relied on by the defendants, threats made by a third person were admitted but the declarant was under indictment for the same murder and circumstances were shown connecting her with the crime.

The effect of the argument of the assistant state's attorney has been discussed. The finding shows that the propriety of the argument of the state's attorney is to be tested by the evidence. Since the evidence is not printed in or annexed to the finding, the defendants take nothing by this assignment of error. *State* v. *Jones,* 124 Conn. 664, 665, 2 Atl. (2d) 374. The specific references to the facts of the case in the requests to charge were sufficiently covered by the general statements in the charge. The other rulings on evidence assigned as error were either not erroneous, were not so presented on the record that in any event error could be predicated upon them or would not be likely to recur upon another trial.

There is error and a new trial is ordered.

In this opinion the other judges concurred.