## COMMONWEALTH *vs.* FRANCIS L. BURTON.

Suffolk. March 31, 1903. — June 5, 1903.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Larceny,* By false pretences. *Witness,* Refreshing recollection. *Evidence,* Materiality, Admissions, Of handwriting, Opinion, Of intent. *Practice, Criminal,* Exceptions, Report. *Words,* "A person convicted."

At a trial under R. L. c. 218, § 40, for larceny in obtaining by false pretences the sum of $2,500 from a railroad company in settlement of a claim for damages from

a collision, if the defendant suffered substantial injuries from the accident for which the railroad company was liable, he none the less may be convicted of the crime, if the railroad company was induced to pay him the money by his exhibition of defects and wounds existing and incurred before the accident and by his false statements of facts as to the extent of his injuries and as to the amount received by him as salary, and in such a case it does not matter whether the sum paid by the railroad company was no more than an adequate compensation for the injuries actually received by the defendant from the accident; nor *semble,* does it matter whether the defendant believed that the sum was a fair, just and reasonable compensation for the injuries he received.

A witness may refresh his recollection by the inspection of a telegram sent to him by another person.

At a trial for obtaining money by false pretences from a railroad company in settlement of a claim for alleged injuries from a collision, at the request of the defendant four telegrams 'were produced by a witness for the government, a claim agent of the railroad company, sent to him by other employees of the company. The portions of the telegrams relating to the defendant were admitted, and the portions relating to other persons were excluded, against the objection of the defendant. *Held,* that the exclusion was right, the evidence excluded being immaterial to the issues on trial.

The fact that a person not a party being present at a trial hears a statement testified to by another in court and does not go upon the witness stand to contradict it, is no evidence that he admits its truth.

It being material to show, in a criminal trial, what salary the defendant received, an officer of a corporation by which he was employed was called, who produced the pay roll signed by the defendant, with testimony that the signature was his. It was objected that the witness did not see the defendant sign the pay roll. *Held,* that this was not necessary if the witness testified that it was the pay roll and that the signature was that of the defendant. *Held, also,* that the objection was not open that the witness was not qualified to testify to the handwriting of the defendant, as it did not appear that that objection was raised at the trial.

At a trial for obtaining money by false pretences from a railroad company in settlement of a claim for alleged injuries from a collision, a claim agent for the railroad company to whom some of the false pretences were made, who has testified for the government and has said on cross-examination that he met a person in the corridor of the hotel where he went to interview the defendant, who warned him that the injuries of the defendant might have been received in the West before he got on the train, may be asked on his re-direct examination whether he believed the statements thus made to him, and be allowed to testify that he did not, this being material to show that the claim agent relied on the defendant's statement as to his injuries.

At a trial for obtaining money by false pretences from a railroad company in settlement of a claim for alleged injuries from a collision, it is competent to prove that the defendant allowed friends of his, who saw him while the negotiations for a settlement of his claim were going on, to think that certain wounds on his head incurred before the accident had been received in the collision, as it showed that he was careful not to allow the true story as to these wounds to be known and thereby corroborated the government's theory as to the false pretences.

No exception lies to a mere expression of opinion by a presiding judge that certain evidence already admitted is not competent, if the evidence is not excluded and the jury is not told to disregard it.

A defendant, on trial for obtaining money by false pretences from a railroad company in settlement of a claim for alleged injuries from a collision, cannot be asked by his counsel whether he was seriously injured in the collision, or whether he was guilty of obtaining money by making false pretences, these questions calling for his opinion upon the issue to be decided by the jury. *Semble*, that a question whether he had an intent to defraud in making certain representations as to the extent of his injuries would have been competent.

Where a ruling has been given in substance no exception lies to a refusal to give it in terms.

The power given to the Superior Court by Pub. Sts. c. 214, § 29, (R. L. c. 219, § 34,) to report to this court questions of law arising in criminal cases, is confined to questions arising "upon the trial of a person convicted in the Superior Court", and, if a question of law arising on a motion for a new trial can be regarded as arising "upon the trial", it cannot be reported until the motion for a new trial has been denied and the defendant stands as a "person convicted."

INDICTMENT, found and returned August 10, 1901, under St. 1899, c. 409, § 24, (R. L. c. 218, § 40,) for larceny in obtaining by false pretences the sum of $2,500 from the New York Central and Hudson River Railroad Company in settlement of a claim for damages from a collision on the road of that company.

In the Superior Court the defendant was tried before *Bell*, J., and was found guilty on November 5, 1902. The defendant alleged exceptions, which were allowed by the judge on February 24, 1903. There also was pending a motion for a new trial, and on March 3, 1903, the judge declared his action upon this motion to be as follows :

" The defendant having filed a motion for a new trial on the ground that the verdict is against the evidence, I am of opinion and find that it was not proved beyond a reasonable doubt that the defendant did not receive a substantial injury in the collision at East Buffalo which would sustain an action against the railroad. I find that there was evidence upon which the jury would be justified in finding against the defendant as to all the other elements of the crime of which the defendant was found guilty as alleged in either of the specifications including the finding that the injuries received by the defendant in the collision were not serious. I am in doubt whether this deficiency of evidence upon the matter of substantial injuries requires me to grant the motion and I reserve that question for the Supreme Judicial Court on my finding stated above and the facts and

evidence stated in the bill of exceptions filed in the case. If my finding requires that the verdict should be set aside, although there was sufficient proof before the jury that substantial injuries were wilfully, fraudulently and intentionally represented to be serious injuries, a new trial is to be granted, otherwise the motion for a new trial is to be overruled."

*G. R. Swasey & M. J. Dwyer*, (*H. L. Baker* with them,) for the defendant.

*J. D. McLaughlin*, Second Assistant District Attorney, for the Commonwealth.

LORING, J.  This is an indictment for larceny which, by our criminal law practice act, includes the common law offence of obtaining money by false pretences. R. L. c. 218, § 40. At the trial the government undertook to prove the indictment by showing that the prisoner had obtained $2,500 from the New York Central and Hudson River Railroad Company by false pretences. On the evidence introduced at the trial the jury were warranted in finding these to be the facts of the case : The prisoner was a passenger on a train leaving Chicago for Boston, at 2 P. M. on Saturday, April 20. When the train was just east of Buffalo, it collided with a wild engine. This occurred a few minutes after seven o'clock on the morning of Sunday, April 21. The prisoner was in his berth in one of the sleeping cars at the time, and met with a substantial injury. He arrived at Boston on Monday, April 22, at about six in the morning, and between one and two o'clock that afternoon he called on a physician. On the next day, April 23, he sent the following telegram, purporting to be from this physician, to a claim agent of the railroad who had boarded the train at Syracuse and had taken the prisoner's name as one of those in the collision: " Judge Burton seriously injured. You had better see him. Hotel Touraine." On the next day another claim agent, Wilson by name, called on the prisoner at the hotel, and was then told by him that he had received the following injuries in the collision: A bruise over the left ear, some inches long, then badly swollen with a boggy swelling, a black eye, and a cut over the forehead ; that his eyesight had been seriously impaired ; that he had received a serious nervous shock; and further, that by reason of these injuries he was incapacitated for business and had to give up his

work and go South for a rest of two or three months; and lastly,
that he was in receipt of a salary of $15,000 a year. These rep-
resentations were in substance repeated to the chief claim agent
of the railroad, one Dwyer, on the morning of the 26th, and on
the afternoon of that day the railroad, through Dwyer, paid the
prisoner $2,500 in settlement of his claim, relying on these rep-
resentations. The railroad admitted its liability from the outset,
and the only question between the prisoner and the company
was as to the amount due. It further appeared that when Wil-
son first saw the prisoner on April 23, he was in bed, propped
up by pillows, with a bandage around his head; that on Wilson's
next visit on the 24th, he was in bed, and his appearance was
about the same as on the previous visit; and lastly, that the
prisoner told Dwyer that he was in general good health before
the accident. The truth was that the difficulty with the pris-
oner's eyesight had existed for years, and was probably con-
genital. The bruise over the ear, the black eye and the cut
over the forehead were received in a drunken altercation in a
house of ill fame in Denver on the night of April 17, three days
before he left Chicago for Boston. That so far from being inca-
pacitated physically by the collision, the prisoner, on the night
of Tuesday, April 23, the day before Wilson saw him for the
first time, visited a house of ill fame in Boston; he went there
again on the night of Friday, April 26, the day his claim was
settled by the payment of $2,500, and again on the 29th of the
same month; and that the last of that week he said he spent
$300 there. On April 23, there was a directors' meeting at the
room of the prisoner in the hotel, lasting from six o'clock in the
afternoon until about eleven o'clock at night, with an intermis-
sion for dinner of an hour and a half at a neighboring restau-
rant, at which the prisoner was present and to which he walked,
and from which he returned on foot. When Wilson first called
on the prisoner, on Wednesday, April 24, he sent up his card;
when the card was brought to the defendant he was sitting up
talking with an acquaintance, Light by name, and he asked
Light to wait until he got into bed, and he told the hotel boy
not to show Wilson up to his room for a few minutes. He then
undressed, got into bed and put the bandage on his head. The
plaintiff was not a judge, as he represented he was, and he lied

on the stand about having sat as a judge of the District Court of the United States at Butte, Montana; he testified that he had held a judicial office; that he acted three months, in the absence of a judge, at Butte, in the District Court of the United States, and that he did this by consent of the bar. The fact was that he was a referee in a case in which the hearings were held in the court room of the United States District Court during vacation, and he sat on the bench in hearing that case as referee. Again, in place of being in receipt of $15,000 a year, as he said he was, his salary at the time was $2,080 a year. And finally he boasted that he had had good luck in making the railroad pay for his bad luck at the house of ill fame in Denver.

The evidence at the trial was conflicting, and the jury were not bound to find the facts to be as they are stated above. But the jury were warranted in finding these to be the facts, and it is necessary that they should be stated and kept in mind in dealing with the prisoner's contention that there was error in the presiding judge's not giving the eleventh ruling requested by him and in not setting aside the verdict on the facts found by him on hearing the motion for a new trial.

The fact found on hearing the motion for a new trial was " that it was not proved beyond a reasonable doubt that the defendant did not receive a substantial injury in the collision at East Buffalo which would sustain an action against the rail-road." The eleventh ruling was: " No matter what representations the defendant may have made, if the jury shall find that the amount paid him by the railroad was not more than an adequate compensation for the injuries which he received in the accident, the defendant cannot be convicted."

The prisoner relies in connection with both questions on *Commonwealth* v. *McDuffy*, 126 Mass. 467.

The principle in question in *Commonwealth* v. *McDuffy* is that if the sole purpose of a false pretense is to procure from the person deceived the performance of a duty owed by that person to the prisoner, like the payment of a liquidated debt which is in fact due, there is no intention to defraud.

In a case where there is evidence of such a duty due to the prisoner, and evidence that the sole purpose of the prisoner in making the false pretence is to procure the performance of that

duty, it becomes necessary to instruct the jury what the result will be if they find that the false pretences were made to obtain performance of the ascertained duty, and for that purpose alone. But that principle is not a principle of general application, and in a case where there is no evidence of a liquidated amount to be paid, or other ascertained duty due, the question dealt with in *Commonwealth* v. *McDuffy* does not arise, and there is no necessity for going further than to tell the jury, as they were told in the case at bar, that the government must prove four things, namely: "That there was an attempt to defraud; that there was an actual fraud committed; that the false pretences were used for the purpose of perpetrating that fraud; and that the fraud was accomplished by means of the false pretences made."

In a case like that now before us, where a passenger on a railroad train receives substantial injuries in a collision for which the railroad admits its liability, and where, for the purpose of defrauding the company he makes a false statement of facts (as distinguished from a statement of opinion) that the injuries received by him were more serious than they are, knowing the statement to be false, he is guilty of obtaining money under false pretences, if the railroad, believing the false statement to be true and relying on it, pays him a sum in settlement of the injury which he falsely represented that he suffered but which he did not in fact suffer.

Both cases are governed by the same underlying principle, to wit, that (1) the prisoner intended to defraud, and that (2) he was successful, that is to say, that he did commit a fraud. But in applying that principle to a case where there is no ascertained duty due to the defendant, to secure the performance of which alone the false pretence is made, as, for example, where there is an acknowledged liability for personal injuries, the extent of which and the amount of compensation due by reason whereof is unascertained and can be settled only by agreement or litigation, the question is whether the defendant made false representations of fact as to the gravity of the injury, with intent to defraud the railroad company by getting paid for a greater injury than the injury he suffered in fact, and whether he succeeded in getting paid for the greater injury.

The issue to be tried is, Did he make the false pretence to get paid for a greater injury than the injury he suffered in fact, not, Did he get more than the jury think he was entitled to for the real injury. For this reason it would have been error to instruct the jury to consider what he would have been entitled to for the injuries which he in fact received, as the prisoner contends that they should have been instructed.

The principle in question in *Commonwealth* v. *McDuffy* originated in *Rex* v. *Williams*, 7 C. & P. 354. In that case the reason for the principle is stated to be that in such a case there is no intent to defraud. *Rex* v. *Williams* was a case where the prisoner, for the purpose of procuring the means of satisfying a debt due to his master from the prosecutor, which his master had been unable to collect, went to the wife of the prosecutor, in the absence of her husband, and told her that his master had bought two sacks of malt from the prosecutor and had sent him to fetch them; and the instruction to the jury was that if they were " satisfied that the prisoner did not intend to defraud Peter Williams, but only to put it in his master's power to compel him to pay a just debt, it will be your duty to find him not guilty. It is not sufficient that the prisoner knowingly stated that which was false, and thereby obtained the malt; you must be satisfied that the prisoner at the time intended to defraud Peter Williams."

There are passages in the opinion in *Commonwealth* v. *McDuffy* which seem to indicate that the reason for the principle is that in such a case no fraud is committed because the prisoner obtains no more than is due him. As an abstract proposition of law, it is true that no fraud is committed if a person gets no more than is due him. But in a case where there is a dispute between a person injured and the person liable for the injury as to the amount due to the injured party, and where these two persons agree to fix the amount due by agreement between themselves, the injured party does get more than is due him if he is paid on the basis of his having received a greater injury than he did receive, although in the opinion of the jury he might have got the same amount for the real injury had he elected to have the amount fixed by a jury in an action brought for the purpose. To tell the jury in such a case to consider

what a jury might have given him had he elected to have the amount fixed in an action would have been misleading and erroneous.

Just what case was presented to the court in *Commonwealth* v. *McDuffy* is not fully stated, either in the report of the case or in the original bill of exceptions. Moreover, what the case would have been on which the court said that the instructions requested should have been given was not known, because the evidence was excluded on which, in the language of the court, the instructions in question were "predicated." The exceptions in that case were properly sustained on the exclusion of the evidence offered. If the language of the opinion goes further than we have construed it to go, it is not to be supported. No case and no text book which has come to our notice has gone further. For another case where the principle was applied on which this court proceeded in *Commonwealth* v. *McDuffy*, see *State* v. *Hurst*, 11 W. Va. 54.

In our opinion the presiding judge was wrong in telling the jury that the prisoner was not guilty if he believed that $2,500 was a fair, just and reasonable compensation for the injuries he had received. The belief of the prisoner as to the amount of compensation he was entitled to receive for the injuries he actually suffered was not the question on which his fraudulent intent depended, but it was whether he believed that he suffered the injuries which he said he suffered, and whether he told the railroad company what he did in good faith to recover what was due for the injury he suffered, or with intent to be paid for an injury which he did not suffer.

The prisoner now contends that this instruction which was wrong was given as the equivalent of the eleventh request, and for that reason his exceptions should be sustained. But this instruction was not given as an equivalent for that eleventh ruling. The instruction already quoted as to the four essentials to be proved by the government covered the point dealt with in the eleventh request, and this was repeated, and is the ground on which the charge proceeded throughout.

The instruction as to the defendant's belief concerning the amount of compensation really due him was more favorable to the prisoner than it should have been, and not having been

excepted to by him, cannot now be complained of by him as misleading. The same instruction was given in the trial court in *Commonwealth* v. *McDuffy*, and it was pointed out by this court in that opinion that it was wrong. In that case it was said : "Nor do we see how the question whether the defendant believed that he had a right so to obtain the money can of itself be a decisive test of his guilt or innocence." 126 Mass. 467, 469.

It is evident that the difficulty presented to the mind of the presiding judge by his finding on the motion for a new trial was occasioned by his instruction that the jury could not convict the defendant under the first specification unless they were satisfied that the prisoner did not suffer substantial injuries in the collision. The prisoner had asked for a ruling that there could be no conviction under the first specification if he "was injured at all," and the judge ruled that if he was substantially injured he could not be convicted of falsely representing that he had been seriously injured, for the difference between the two was matter of opinion. We think that this instruction was too favorable to the prisoner. If the prisoner was substantially injured, he would be guilty of the offence here charged if he made false statements of fact as distinguished from statements of opinion as to the extent of his injuries, with intent to defraud, and if the railroad company paid the money believing those statements of fact and in reliance thereon, and was defrauded. We think that a man who has been substantially injured can make a statement of fact as distinguished from a statement of opinion as to the extent of his injuries, and that the first specification was sufficient to let in any such representations of fact as to the serious character of the accident.

We will take up the other exceptions argued in the order of the defendant's brief.

1. The exception to the ruling that the witness Dwyer could refresh his recollection from a telegram sent him by Wilson is not well taken. See *Commonwealth* v. *Ford*, 130 Mass. 64, 67, where cases are cited in which it is held that "it is not necessary that such writing should have been made by the witness himself, or that it should be an original writing, provided after inspecting it he can speak to the facts from his own recollec-

tion." That was fulfilled in this case. How it would enable the witness to refresh his recollection is not clear, but his testimony to that effect made it competent for him to refresh his memory by it. The prisoner had the right to show on cross-examination on the *voir dire* that the witness's memory could not have been refreshed by the telegram, if that was the case.

2. The next exception is to the exclusion of a portion of the four telegrams produced by the witness Dwyer at the prisoner's request and put in evidence by him. The telegrams were sent to Dwyer by other employees of the railroad; and the portions relating to the prisoner were admitted, while those relating to other persons were excluded. What was said by one employee of the railroad to another about other persons and the injuries suffered by them is not evidence on the issues here in question.

3. The next exception is to the refusal of the judge to allow a question to be put to Dwyer on cross-examination. At the trial now under consideration Dwyer testified that Dr. Erlich did not advise the witness to wait before making a settlement with the prisoner until the result of the accident to the prisoner had fully developed. The prisoner then offered to show that when Erlich testified to that effect in the municipal court, the witness, who was present, did not go on the stand in rebuttal and contradict the statement. The conduct of cases in court, including the decision of what witnesses are to be called to the stand is with counsel, and the fact that a person hears a statement testified to by another in court, and does not contradict it on the stand in that proceeding is no evidence that he admits the truth of it.

4. The government proved what salary was paid to the prisoner, by calling an officer of the corporation by which he was employed, who produced the pay-roll signed by the prisoner, with testimony that it was his signature. It is now objected that the witness did not see the prisoner sign the pay-roll; but that was not necessary if the witness testified that it was the pay-roll and that it was the signature of the prisoner. It is now objected further, that he was not properly qualified as a witness to testify to the handwriting of the prisoner. It does not appear that that objection was raised in the court below.

5. On cross-examination of Wilson, the under claim agent of

the railroad company, the prisoner brought out the fact that the witness met a person when he was passing through the entry of the hotel, on his second visit to the prisoner, and that this person then told him, Wilson, to " look out and see where he [the prisoner] got those injuries, if he did not get them out West before he got on the train at all " ; and it further appeared that this person was Light; but the witness did not know Light at this time or who he was, but he learned afterward that the person in question was Light.  On re-direct examination Wilson was asked if he believed the statements made by the person whom he then did not know, and he testified that he did not.  The evidence was competent on the question whether the witness acting with Dwyer for the company relied on the prisoner's statement that the bruise over the left ear, the black eye and the cut on the forehead were the result of the collision at Buffalo.

6.  The government was allowed to ask on cross-examination of one Dean, a witness called by the prisoner, what made him suppose that the visible injuries referred to in specification two were the result of the collision, and he answered in substance that he supposed he took it for granted that they were.  It is hard to see how the prisoner is prejudiced by the answer.  If he is, it must be because the answer implies that the defendant allowed him to think so.  We are of opinion that it was competent to prove that the prisoner allowed friends of his, who saw him while the negotiations for a settlement of his claim were going on, to think that the wounds on his head were received in the collision.  It showed that he was careful not to allow the true story as to these wounds to be known, and thereby corroborated the government's theory as to the fraud stated in the second specification.

7.  The defendant argues that he has an exception because after the witness Dean had testified that the prisoner said he did not want to walk so far as the restaurant where the directors had dinner on the evening of April 23, the assistant district attorney objected to the answer as incompetent, and " counsel for the prisoner suggested that it was competent to show the reason given by him why he did not want to go."  The presiding judge said " Not in his own favor," and the prisoner's attor-

ney said "Your Honor will save me an exception", to which there was no answer. The result of this was that although the judge expressed the opinion that the evidence was not competent, the jury was not told to disregard it; the evidence stood, and no exception is before us.

8. The prisoner when on the stand was asked by his counsel if he was seriously injured in the collision at Buffalo. The question called for the witness's opinion on the issue which it was the province of the jury to decide and was properly excluded. The prisoner argues that the question was competent on the issue whether he intended to defraud. If he had been asked whether he had an intent to defraud in making the representations made by him as to the extent of his injuries, it would have been competent. The question asked involved other considerations.

9. There was a similar objection to the question asked the prisoner by his counsel, if he was guilty of obtaining money by making false pretenses. The question calls for the prisoner's opinion on the law and on the inference to be drawn from the facts; it is not, as he argues, equivalent to asking if he had an intent to defraud. It is too plain for discussion.

10. The prisoner has no exception to the refusal to give the fifth and seventh rulings requested by him. At the conclusion of the charge the presiding judge said that "for certain reasons" he had not given the fifth in terms, and the prisoner's counsel said that he thought that it had been given in substance. The presiding judge added that he thought he had given the seventh in substance, although not in form, to which no answer was made by the counsel for the prisoner.

This case is here on exceptions taken by the prisoner, and on a reservation of a question of law arising on a motion for a new trial which was not disposed of in the Superior Court. The authority of a judge of the Superior Court to report a question of law to this court in a criminal case is derived from R. L. c. 219, § 34. A question of law cannot be reported before verdict because by the terms of the act a report can be made only after conviction. *Commonwealth* v. *Intoxicating Liquors*, 105 Mass. 468. If a question of law arising on a motion for a new trial is a question of law arising "upon the trial of a person convicted"

within Pub. Sts. c. 214, § 29, (R. L. c. 219, § 34,) it cannot be reported until the motion for a new trial has been disposed of and it has been decided by the Superior Court that the prisoner is to stand as "a person convicted." This is in accordance with the rule as to reporting cases on the civil side of the court. Until St. 1900, c. 311, (R. L. c. 173, § 105,) which does not apply to criminal cases, no question of law could be reported before verdict or decision by the court in a civil case on the common law side of the court. *Commonwealth* v. *Teevens,* 141 Mass. 577.

*Motion for new trial denied ; exceptions overruled.*