LAURA MAY NEFF *vs.* JOSEPH LEEDS NEFF.

Third Judicial District, Bridgeport, April Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

An erroneous conclusion, drawn by the trial court from subordinate facts, is an error of law, reviewable by this court.

In a divorce action, to prove adultery by circumstantial evidence, the circumstances must be such as to lead the guarded discretion of a reasonable and just man to the conclusion of guilt.

This rule requires, as in other civil cases, proof by a fair preponderance of the evidence; but in view of the importance of the question to the parties and to the State, and of the intense interest of the parties to color the facts, the trial court must be solicitous to see that the proof of adultery is clearly established by such fair preponderance of the evidence. It should not see evil where the circumstances may reasonably lend themselves to an innocent interpretation, nor, on the other hand, should it refuse to reach that conclusion to which the sound and unprejudiced judgment should lead.

Hence it is error for the court to conclude that to prove adultery by circumstantial evidence the circumstances must be such as to lead to the fact of adultery, not only by fair inference, but as a necessary conclusion, to the exclusion of every rational theory of innocence, since that, in effect, requires proof beyond a reasonable doubt.

It is not sufficient to state an exception to a ruling on evidence in an

Neff *v.* Neff.

excerpt from the stenographic notes; there should be a statement of the question, answer, objection, and exception, together with a brief statement of such facts as appear in the evidence which are necessary to an understanding of the objection and ruling. Only thus is the appellate court put, as far as possible, in the same position as the trial court at the time of its ruling.

Any memorandum which can in fact stimulate the present recollection of a witness may be so used, whether made by the witness or not, whether it be the original or a copy, or whether made at the time of the events testified to or not.

This rule differs from the rule relating to proof of matters of past recollection, for there the witness has no recollection of the matter used to refresh his memory, but he knows upon inspection that at some former time he had knowledge of the facts stated in the memorandum and that the statement is true. Such a memorandum must have been made at or about the time of the event recorded, and the witness, while he need not have made the memorandum and may use a copy if the original is not available, must testify that it does represent his recollection as it existed at the time.

In the case of past recollection, the memorandum may be laid in evidence as a part of the direct examination, which in the case of present recollection it may not, since it is the recollection, not the memorandum, which is the evidence. In either case it should first appear, either by acquiescence of counsel or by the finding of the court—unreviewable unless there has been a clear abuse of discretion—that the use is not a cover to get in evidence in an irregular way, that the witness, in the one case, does not have a memory of the past transaction but does know that the facts the memorandum states are correct, and in the other, that the memory is in fact stimulated. The protection against a fictitious use of a memorandum lies in the right of the opponent to inspect it, and to cross-examine regarding it before it is used, and to have the jury examine it for the purpose of showing that it could not properly refresh the witness' memory.

Hence it is error to refuse to permit a detective to refresh her recollection by referring to reports which she dictated to a stenographer, on the ground that the transcript had not been made by her, nor verified by her immediately after being made.

Argued April 12th—decided June 1st, 1921.

Action for a divorce upon the ground of intolerable cruelty, brought to and tried by the Superior Court in New Haven County, *Kellogg, J.*, after the defendant had filed a cross-complaint praying for a divorce upon the

ground of the plaintiff's adultery; facts found and judgment rendered for the defendant upon the complaint and for the plaintiff upon the cross-complaint, from which the defendant appealed. *Error and new trial ordered.*

*Warren F. Cressey,* with whom was *Justus J. Fennel,* for the appellant (defendant).

No counsel appeared for the appellee (plaintiff).

WHEELER, C. J. The defendant appeals from the decree of the court dismissing his action upon the cross-complaint charging adultery. He assigns as error the three conclusions to which the court came upon the facts. We cannot hold, as matter of law, that the trial court was in error in the third conclusion it drew, that the facts did not warrant it in finding "as a necessary conclusion that the plaintiff had been guilty of adultery." An erroneous conclusion, drawn from subordinate facts, is an error of law, and reviewable by us. *Hayden* v. *Allen,* 55 Conn. 280, 289, 11 Atl. 31. Our examination of the facts stated in the finding does not indicate that the trial court did err in this conclusion.

The first conclusion reached by the trial court was that "to prove adultery by circumstantial evidence the circumstances must be such as to lead the guarded discretion of a reasonable and just man to the conclusion of guilt." This is the law.

The conclusion adopted was Lord Stowell's often approved of rule of proof as found in *Loveden* v. *Loveden,* 4 Eng. Eccl. Rep. 461, 2 Haggard, 1. This rule requires, as in other civil cases, proof by a fair preponderance of the evidence. And whether the proof of adultery be by what is popularly known as direct or by circumstantial evidence, the presentation of the proof is

governed by the rules applicable to civil cases, and the ultimate conclusion as to the adultery is dependent upon the fair preponderance of the evidence. This standard never varies, but since the severance of the marriage tie is of such serious moment to those immediately affected, and of such supreme importance to the State, whose security rests so largely upon the preservation of the family tie and of the home, the courts require that in this class of cases the trial court should be solicitous to see that the proof of the adultery is clearly established by the fair preponderance of the evidence. And then, too, in weighing the evidence of adultery, the court should exercise great care to see that it is not imposed upon through the intense interest of the parties to color the facts; it should not see evil where the circumstances may reasonably lend themselves to an innocent interpretation, nor, on the other hand, should it refuse to reach that conclusion which the sound and unprejudiced judgment should lead to. This is the meaning of the "guarded discretion" which Lord Stowell intended the trier to exercise. And when its exercise leads the trier, by the fair preponderance of the evidence, to the conclusion of guilt, the rule of proof of the law has been satisfied. *Allen* v. *Allen,* 101 N. Y. 658, 5 N. E. 341; *Thayer* v. *Thayer,* 101 Mass. 111; *Taft* v. *Taft,* 80 Vt. 256, 67 Atl. 703; 9 R. C. L. p. 328, § 105; 14 Cyc. 684; 19 Corpus Juris, p. 138.

A few authorities have held that the circumstances must prove the fact of adultery as a necessary conclusion (*Burke* v. *Burke,* 44 Kan. 307, 24 Pac. 466), and again, occasionally, it has been held that the circumstances must exclude every rational theory of innocence (*Aitchison* v. *Aitchison,* 99 Iowa, 93, 68 N. W. 573). These decisions are against the weight of authority, which requires the same measure of proof as in all civil actions.

The second conclusion of the trial court was: "To

prove adultery by circumstantial evidence the circumstances must be such as to lead to the fact of adultery not only by fair inference but as a necessary conclusion, to the exclusion of every rational theory of innocence." The conclusion is open to the criticism of the appellant, that it in effect requires proof beyond a reasonable doubt, and that, between the first and second conclusion, there is an irreconcilable conflict. The proof of adultery required in a civil action is not that required in a criminal action.

The error into which the trial court fell cannot be held to have been harmless, since the defendant was entitled to have his cause of action determined by the measure of proof sufficient for the determination of civil actions.

The exceptions to the rulings on evidence are stated in long excerpts from the stenographic notes. Our practice requires a statement of the question, answer, objection, and exception, together with a brief statement of such facts as appear in the evidence which are necessary to an understanding of the objection and ruling. The appellate court, so far as this is possible, should be put in the same position as the trial court at the time of its ruling. The failure of trial courts to follow this practice not infrequently makes it difficult for this court, on appeal, to understand the ruling made, and it sometimes results in denying litigants a fair consideration of their exceptions to the rulings which they desire reviewed. Practice Book (1908) p. 232, § 102, and page 266, § 5; *Todd* v. *Todd*, 84 Conn. 591, 592, 80 Atl. 717; *Twining* v. *Goodwin*, 83 Conn. 500, 502, 77 Atl. 953.

The only exception to the evidence pursued upon the appeal, is the ruling refusing to permit a detective to refresh her recollection from a report. The detective testified that she had observed the plaintiff for some time, and had dictated daily reports of her observations

to a stenographer in her employer's office, and that these contained many incidents on different dates. The witness testified as to these occurrences up to a certain point, and then requested permission to refresh her recollection by the use of the transcript of the stenographic notes, which she said she had examined and knew to be correct. The court refused to permit this, upon the ground that the transcript had not been made by her, nor verified by her immediately after being made. At the conclusion of her testimony the request was renewed. The court again refused the request upon the ground that the report was not made by her. Its refusal was not that it would not in fact refresh her recollection. That it would appeared to be one of the accepted facts in the case. The statement of the ground of its ruling indicates that the trial court inadvertently confused the rule relating to proof of matters of present recollection with the rule relating to proof of matters of past recollection. In the latter class, the witness has no recollection of the matter used to refresh his memory, but he knows upon inspection that at some former time he had knowledge of the facts of this statement, and that the statement is correct. Such a memorandum must have been made at or about the time of the event recorded, and the witness, while he need not have made the memorandum and may use a copy if the original is not available, must testify that it does represent his recollection as it existed at that time. In the former, the memorandum stimulates the recollection of the witness so that he may testify from a present recollection. Any memorandum which can in fact stimulate the present recollection may be used, whether made by the witness or not, whether it be the original or a copy, or whether made at the time of the events testified to or not. In the case of the past recollection the memorandum may be laid in evidence as a part of the direct

examination, while in the case of the present recollection it may not, since it is the recollection, not the memorandum, which is the evidence. In each case the opponent, before the memorandum is used by the witness, is entitled to cross-examine him in order to test the question of his recollection.

Before the memorandum of the past recollection is laid in, or the witness is permitted to testify to a present recollection after it has been stimulated, it should appear by acquiescence of counsel, or by the finding of the court, that the úse is not a cover to get in evidence in an irregular way; in a word, that the witness in the one case does not have a memory of the past transaction but does know that the facts the memorandum states are correct, and in the other, that the memory is in fact stimulated. From the facts stated there was every reason to find that this detective's recollection would be stimulated by an inspection of the report of these detailed occurrences of varying dates, and the good faith of the witness upon this point is not questioned. Whether the witness' recollection has been refreshed by the memorandum is in each case a question of fact for the trial court, and its conclusion is unreviewable unless there has been a clear abuse of discretion. This procedure is fully stated in our leading text-books on evidence. 1 Greenleaf on Evidence (16th Ed.) § 439 a; 1 Wigmore on Evidence, § 758.

We restate the procedure at some length, since we have never heretofore done this. We followed the rule of refreshing present recollection in *Erie Preserving Co.* v. *Miller*, 52 Conn. 444, 446, and allowed the witness to use freight waybills to refresh his recollection, though not made by him. In *Smith* v. *Phipps*, 65 Conn. 302, 32 Atl. 637; *Norwalk* v. *Ireland*, 68 Conn. 1, 13, 35 Atl. 804, and *Palmer* v. *Hartford Dredging Co.*, 73 Conn. 182, 47 Atl. 125, the writing or instrument used

to refresh the memory of the witness was made by him. In *Turner* v. *Turner*, 90 Conn. 676, 680, 98 Atl. 324, the writing attempted to be used was a copy and we there specifically adopted the rule stated in 1 Wigmore on Evidence, § 758: "Any writing may be used to refresh the recollection of a witness, unless its use under the circumstances would be improper." In *Burn* v. *Metropolitan Lumber Co.*, 94 Conn. 1, 107 Atl. 609, we approved of the refusal to permit a witness to use a price list to refresh his memory, since he had no knowledge whatever of the price list or its statements.

Instances where the witness was permitted to refresh his recollection from memorandum not made by him, are: *Commonwealth* v. *Ford*, 130 Mass. 66; *Commonwealth* v. *Burton*, 183 Mass. 461, 470, 67 N. E. 419; *Fay* v. *Walsh*, 190 Mass. 374, 377, 77 N. E. 44; *Taft* v. *Little*, 178 N. Y. 127, 131, 70 N. E. 211; *Federal Union Surety Co.* v. *Indiana Lumber & Mfg. Co.*, 176 Ind. 328, 332, 95 N. E. 1104.

A reporter is allowed to refresh his memory from the published report which he had furnished his newspaper. *Erdman* v. *State*, 90 Neb. 642, 651, 134 N. W. 258. A witness is permitted to refresh his recollection by reference to his testimony upon a former trial; *Portsmouth Street R. Co.* v. *Peed*, 102 Va. 662, 676, 47 S. E. 850; *Riley* v. *Fletcher*, 185 Ala. 570, 64 So. Rep. 85, 87; or by a telegram sent him by some one else; *Commonwealth* v. *Burton*, 183 Mass. 461, 470, 67 N. E. 419; or from memoranda made at different times from memory, and then incorporated in one report. *McCormick* v. *Pennsylvania Central R. Co.*, 49 N. Y. 303, 316; 21 Yale Law Journal, 675 note.

The protection against a fictitious use of the memorandum lies in the right of the opponent to inspect it, and to cross-examine regarding it, before the witness uses it to refresh his memory. "The other party," says

Chief Justice Cooley in *Duncan* v. *Seeley,* 34 Mich. 369, 370, "had a right to know what the memorandum was on which he relied, and whether it had any legitimate tendency to bring the fact in controversy to mind. . . . The defendant was entitled to see it at the time in order to test the candor and integrity of the witness." And, further, the opponent may call the jury's attention to it, and have them examine it "for the purpose of showing that it could not properly refresh the memory of the witness." 1 Wigmore on Evidence, § 763.

The court was in error in refusing to allow the witness Travis to use the report in order to refresh her recollection.

There is error and a new trial is ordered.

In this opinion the other judges concurred.