## STATE OF CONNECTICUT

*vs.*

## GEORGE PARELLI AND CAMILLO VENEZIA

Superior Court          New Haven County          File No. 6046

MEMORANDUM FILED DECEMBER 11, 1939.          125 Conn. 321

*Abraham S. Ullman, State's Attorney,* of New Haven, for the State.

*Louis Sperandeo,* and *Louis Feinmark,* of New Haven, for the Defendants.

MUNGER, J.  The accused must appreciate the fact that this case was not tried to the court.  They submitted themselves to the jury and in the judgment of the jury they have been found guilty.  The function of the court now is upon these motions to declare in effect whether or not errors occurred in the progress of the trial which prevented the accused from having a fair trial.

The court sometimes sets aside the verdict of the jury when it appears after determination of the case that it made some serious errors in its charge.  No error in the charge is now claimed as the basis for either of these motions.

The points pressed in argument in substance are three.  It is said in the first place that the evidence was insufficient to convince the jury beyond a reasonable doubt of the guilt of the accused.  In the second place, it is said that in argument the state's attorney used language so prejudicial that the accused could not be said to have had a fair trial.  The main point pressed concerns itself with rulings upon evidence.

It is surely useless to now review all of the evidence presented by the State.  One or two things, however, may be pointed out. If the jury believed the testimony of Virelli, it must have found that the accused made statements overheard by him which amount practically to an admission of their guilt.  It is impossible to see how the accused could hope to avoid the force of this testimony except by asking the jury to find that it was unworthy of credit.  Parelli upon the trial did not testify.  Venezia did testify and some of the things which Virelli said he heard the accused say during this conversation were not denied. An explanation was attempted by the witness, but it must be conceded that the nature of the attempted explanation by Venezia might have seemed worse to the jury than Parelli's silence.

It is now claimed in argument upon these motions that Virelli's testimony should not have been received.  Counsel seem to take the position that there was no evidence upon which to convict these accused beyond a reasonable doubt without the testimony of Virelli, but it does not seem to be claimed that with this testimony, believed by the jury if they chose to believe it, there was an insufficiency of evidence.

Virelli testified that while this conversation was going on he translated it and it was taken down at the time and put in a book by Lieutenant Schwartz, Lieutenant Shatzman and Mrs. Salvione. This testimony was offered and admitted for the purpose of showing that a memorandum was made at the time of the hearing of the conversation under the direction of the witness Virelli, who was listening. It was all received without any objection. In the former trial the court held there was error in the reception of Virelli's testimony because it in fact appeared that all he did was to read from the contents of this book which served as a memorandum. In the present trial Virelli testified that he read over this memorandum ten to fifteen times and it did in fact refresh his recollection. He testified without looking at any paper of any kind, neither the book nor anything else and his testimony was admitted as independent recollection refreshed. This, as I understand it, follows the rule in *Neff vs. Neff*, 96 Conn. 273.

It is said, however, that all Virelli's testimony amounted to was a repetition of some writing that had been memorized. This surely is entering the realm of metaphysical distinction. As it is said in the *Neff* case, where the memorandum does in fact refresh the recollection of the witness as in this case Virelli said it did, the memorandum is not admissible because the testimony is in fact that of independent recollection refreshed by the memorandum. I can see no merit in this claim with respect to the testimony of Virelli.

When the testimony of Lieutenant Schwartz, Lieutenant Shatzman and Mrs. Salvione was offered to the effect that they had written down in the book what Virelli told them the accused were saying it was assumed at that time that it was to be a foundation for offering the contents of the book. The court immediately ordered the testimony to be stricken out, cautioned the jury to disregard it, and this caution was emphatically repeated in the charge. I can see no merit of any claim of the accused which is founded upon the reception of Virelli's testimony.

The testimony of Mrs. Salvione as to the declaration made to her by her husband which was in fact that he was going to New Haven to meet the accused, was received subject to the express limitation placed upon it by the Supreme Court in the former trial. She was allowed to testify that her husband told her that he was to meet the accused to tell them something. It now

appears that while the accused do not go so far as to say that the declaration that Salvione was to meet them in New Haven was inadmissible, they claim that the latter part of the testimony, that he was going to tell them something, was inadmissible. In my opinion this claim has no substance. It did not appear what it was that Salvione intended to tell the accused and by no possibility could the statement that he did intend to tell them something convey to the jury any knowledge or inference of what that fact was.

In connection with this testimony, however, the accused make the claim that it was used by the state's attorney in argument in a highly improper manner and with great prejudice to the accused. The state's attorney in argument, it is pointed out, said that Salvione and the two accused were gangsters; that they were engaged in a racket and used the word "gangland." It was undisputed, and Venezia expressly testified, that he and Parelli and Salvione were engaged in the illegal sale and transportation of alcohol. It is common knowledge, it must be said with regret, that there is such a thing as gangland which now afflicts society; that there are gangsters and that some of our most flagrant crimes are committed within this domain of gangland in which gangsters commit crimes against each other. No one could be familiar with the notorious events which have occurred in our country within the last ten years without knowing all of these facts. I think the argument of the state's attorney did not exceed the fair limits of the suggestion of a motive or the exposition of a theory, based upon sufficient evidence, that this murder was committed by the accused persons.

It is contended by the accused that the State wholly failed to prove its case because of the defense of alibi. The gist of this argument is that the evidence conclusively showed that the crime could not have been committed by the accused. This, of course, leaves out of the case entirely the testimony of Virelli, but aside from that the argument is without conviction. The defense of alibi was based in the main upon the testimony of Officer O'Donnell who said he first saw the accused in the Buick car on Main Street in East Haven at 1:45 a.m. In so far as the force of the evidence in respect to alibi depended upon the testimony of O'Donnell it must be said that the jury could have discredited its accuracy if they chose. A very striking fact with respect to this testimony is that O'Donnell said in his written report of the occurrences of that evening that he found the Buick car on Townsend Avenue and two persons were in it.

Upon the trial he testified that no one was in the car. This is a striking inconsistency. In addition to this there is other evidence in the case which might permit the jury to discredit the accuracy of O'Donnell. Sergeant Mulcahy testified that he talked to O'Donnell and Boyce and in this conversation O'Donnell admitted that his time was about one-half hour out of the way. The testimony was as follows:

Q—Will you repeat just what was said? A—He said that his time was about one-half hour out of the way and Boyce nodded his head that is right.

It is only a matter of common sense that witnesses who are giving their recollection of the time at which the events testified to in this case occurred could not be expected to make it exactly a matter of minutes. It must be in the nature of things, if they took no pains to note the precise time, an approximation. If O'Donnell's time was one-half hour out of the way the Buick car might well have gone from the Orange Road to Townsend Avenue.

Further, the effect of the alibi claimed by the accused suffers extremely from the fact that the witness Peckham testified that the accused were driven to the gas station on the morning of November 8th by Romano, who had been previously identified by the testimony of other witnesses as having some connection with the accused. If this testimony was correct the testimony given by the accused must have been held by the jury to be absolutely false and the force of their alibi practically destroyed.

In the main this comment covers the substance of the claims urged by the accused in argument. I cannot see that anything has been pointed out to the court which would justify it in disturbing the verdict of the jury.

The motion in arrest of judgment and the motion to set aside the verdict are denied.