[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter first came to the court by summons and complaint dated July 8, 1999 and returnable August 3, 1999 in which complaint the plaintiff petitioner sought a dissolution of the marriage, alimony, an allowance to prosecute, a property settlement under Connecticut General Statutes (C.G.S.) § 46b-81 and such other relief as the court deems fair and equitable.
Accompanying the complaint was a motion for alimony, debt allocation and a motion to enjoin, also, a motion for exclusive possession of the residence known as 16 Oakwood Drive, Gales Ferry. These motions were the subject of a certain stipulation dated September 27, 1999 approved by the court, Kenefick, J. The plaintiffs financial affidavit also accompanied the complaint.
On July 26, 1999 the defendant appeared by counsel.
On August 10, 1999 it appears that mutual restraining orders were filed by both the plaintiff and the defendant.
On September 27, 1999 pursuant to the terms of an agreement between the parties, the defendant agreed to pay pendente lite alimony in the amount of $200.00 a week.
On September 27, 1999 the plaintiff filed a financial affidavit indicating that as of that date she was unemployed.
The defendant on the same date filed a financial affidavit showing his then employment with the firm of Fuss O'Neill as a civil engineer. CT Page 12935
On January 24, 2000 the court, Corradino, J., made a finding that there was an arrearage as to alimony in the amount of $400.00 and, in addition, the court granted attorney's fees of $500.00 to be paid by the defendant. As concerns said orders, see the Motion for Contempt, dated November 8, 1999.
On December 15, 1999 the plaintiff filed a motion to compel with regard to the removal of certain personal property belonging to the defendant. An examination of the file reflects that this motion was never acted on.
On January 21, 2000 the defendant by counsel filed a Motion to Modify Alimony pendente hite on the claim that the defendant at that time was unemployed and his circumstances financial had changed.
On April 27, 2000 the file reflects that the alimony pendente hite was modified to $75.00 a week with a payment of an additional $25.00 a week on a determined arrearage.
On April 24, 2000 the plaintiff filed a financial affidavit indicating her employment position at that time with Mohegan Sun as a member of the cleaning crew.
On April 24, 2000 the defendant filed a financial affidavit reflecting his status as being unemployed.
The Court makes the following findings of fact.
The plaintiff, whose maiden name was Gwyneth M. Williams, and the defendant were joined in matrimony at Gales Ferry, Connecticut on October 8, 1994.
One of the parties has resided continuously in this state for more than one year prior to the initiation of these proceedings.
The marriage of the parties has broken down irretrievably with no reasonable prospect for reconciliation.
The plaintiff and the defendant have no minor children issue of this marriage.
No minor children have been born to the plaintiff wife since the date of the marriage of the parties.
Neither the State of Connecticut nor any municipality, town, city or subdivision thereof is contributing to the support and maintenance of CT Page 12936 either the plaintiff or the defendant.
According to the health form this is the second marriage for each party.
The husband's education extended through securing a college degree.
The wife's education extended through completing high school.
The plaintiff wife has two children issue of a prior marriage; to wit, two daughters, one age 16 and one age 19.
The plaintiff claimed that one of the causes of the breakdown was the defendant becoming interested in another woman.
The plaintiff indicated that she was also the subject of verbal abuse.
The friend of the defendant was identified by name in the proceedings.
The plaintiff first became suspicious with regard to the defendant's friendship in July of 1999.
The plaintiffs testimony indicated that the defendant stayed out to late hours in the evening and that on occasion the defendant's friend would call on the telephone at the home.
On one occasion the defendant joined the plaintiff and the friend for dinner.
The testimony indicated that the defendant had a credit card with Sears, which was a card joint between himself and his lady friend.
The plaintiff observed the defendant with the lady friend on various occasions.
The plaintiff represented that household bills and obligations were not paid on a regular basis.
The plaintiff traveled to North Attleboro, Massachusetts where she observed the defendant at the home of the defendant's cousin and he was seen there with the subject lady friend.
The plaintiff represented that the verbal abuse, which she was the subject of, was frequent and the plaintiff testified as to the phraseology used by the defendant against her. The court sees no necessity to set that forth in detail. Apparently, the verbal abuse continued over a substantial period of time. CT Page 12937
The plaintiff claims that during the pendency of the proceedings that contempts were sought on three occasions. This seems to be in some conflict with the state of the file.
The remittances which the plaintiff received from the defendant complying with the orders of the court financial on some of them were written the words "blood money".
The plaintiff owns or has an interest in a home in Gales Ferry. This home was originally solely owned by the plaintiff and originally purchased by her in 1979.
As indicated, the plaintiff has two daughters by a prior marital union.
It is the plaintiffs claim that the defendant did not make any contribution toward the mortgage, taxes or insurance obligations with regard to the home in which she resides.
The plaintiff is desirous of retaining this home.
The plaintiff now has two jobs; she works at Mohegan Sun and is a school bus driver. Her hours at the Mohegan Sun Casino amount to 40. Her hours at the school bus position are 18 hours a week.
The plaintiff claimed that the defendant, during the course of the marital union, made threats to her and that the comments made by the defendant to her caused her emotional upset and unease.
The plaintiff has a very modest retirement fund as reflected on her financial affidavit.
She works the midnight to early morning shift at Mohegan Sun. actually 12:30 a.m. to 8:30 a.m. Her school bus activities are from 2:00 during the school week.
In June or July of 1999 the plaintiff asked the defendant to leave and he acquiesced in that request.
At that time it appears that the plaintiff was unemployed. The plaintiff had held a certificate as a licensed daycare provider but that was allowed to lapse.
The plaintiffs employment at Mohegan Sun commenced on August 6, 1999.
The financial affidavit filed by the plaintiff on July 23, 1999 did not CT Page 12938 reflect any prospective income from Mohegan Sun.
The plaintiff receives child support from a former spouse in the amount of $150.00 a week.
During the course of the marriage the plaintiff and the defendant joined in refinancing the mortgage on the premises known as 16 Oakwood Drive. Both the plaintiff and the defendant are signatories to those mortgage documents. The purpose behind the refinancing it would appear was to secure a lower rate of interest and to take the plaintiffs former husband's name off the mortgage and land records.
The plaintiff is age 47. She characterized her health as tolerable. The plaintiff indicated that there were no problems during the marriage pertaining to alcohol nor substance abuse.
The plaintiff indicated that on one occasion the defendant shoved her.
There were apparently no occasions on which the authorities were called as concerns any domestic disharmony.
The defendant, now of Attleboro, Massachusetts, testified with regard to his income as concerns his present position with Bechtel, which showed a base weekly compensation figure of $1,170.00 a week. To this there would be added overtime in the event it was available.
The defendant admitted using bad language frequently as concerns the plaintiff.
The defendant claimed that he was asked to leave the residence and complied therewith.
The defendant acknowledged that, in his words, most of the mortgage payments which included taxes and insurance after the refinance were made by the plaintiff and denied making any threats of physical harm to the plaintiff.
Because of the various locations where the defendant has been employed, the parties actually resided together under the same roof for only about three years.
Although the plaintiff raised the specter of misconduct on the part of the defendant with another lady, the defendant denied being unfaithful and the alleged friend was not subpoenaed to testify and did not appear.
The parties acknowledged that there were arguments during the course of CT Page 12939 the marriage and some of the arguments were loud and tumultuous.
The defendant testified that while working with an engineering firm in Philadelphia in Pennsylvania that because of the travel problems and, in his words, "to please the plaintiff, he left that job and came to Connecticut." After coming to Connecticut it took the defendant five months to get a position of similar consequence here in Connecticut. In due course the defendant's position with the engineering firm of Fuss 
O'Neill was terminated and he was laid off. The court will refer to the exhibit in due course.
On one occasion during the course of the marriage the plaintiff made a trip to England to see her mother. She was not accompanied by the defendant.
The defendant has paid, it is represented during the pendency of the proceedings, approximately $5,000.00 under PL orders.
The defendant acknowledged that writing the words "blood money" on some of the financial payment drafts was childish and is repentant thereof.
From the financial affidavits of the parties the court finds, as concerns the plaintiff, that her principal employer is the Mohegan Sun Casino where she is part of a cleaning crew. Her weekly gross is $320.00, itemized deductions which appear reasonable including $32.00 a week into a 401K, in the amount of $96.41 for a net of $224.37. In addition the plaintiff shows weekly income from her school bus driver activities of $147.00 and the support payment of $150.00 that she receives from her first spouse as concerns her two daughters.
Her total net weekly income as reflected on the financial affidavit amounts to $521.37. She shows expenses of $863.93, which includes $150.00 for miscellaneous and hair care. The plaintiffs attached Schedule A to her financial affidavit reflects total debt presently to the amount of $16,493.00.
The plaintiff shows the property, which is presently in the joint names of the parties, at 16 Oakwood Drive, Gales Ferry valued at $130,000.00, with a mortgage of $93,762.00 for an equity of $36,238.00, a 1997 Ford automobile valued at $12,000.00 with an equity of only $1, 835.00, miscellaneous personal property and furnishings $7,500.00 and $250.00 in the bank.
The defendant's financial affidavit reflects from his occupation as a civil engineer with Bechtel Corp. of Boston his weekly gross being $1,170.00 with deductions of $538.89, which includes a deduction for CT Page 12940 vacations and insurance. He shows a net of $631.11, weekly expenses of $599.73, debts totaling $23,478.00. He shows approximately the same figures with regard to the premises known as 16 Oakwood Drive, Gales Ferry where he is one of the co-owners. He shows a 1997 Ford automobile valued at $14,000.00 with a 0 equity, $48.00 in the bank and a 401K valued at $10,499.00.
From the exhibits the court notes Plaintiffs Exhibit 1, a verification of the plaintiffs earnings from her school bus driver's activities showing her net pay weekly of $147.21.
Plaintiffs Exhibit 2 are copies of checks sent to her representing pendente lite payments, each in the amount of $60.00. There are six such checks shown on the exhibit.
Plaintiffs Exhibit 3 reflect copies of checks each in the amount of $250.00 on which the word "blood money" is written.
Plaintiffs Exhibit C is entitled "Pre-Alimony Payment History" and details the payments made and the form of the payment during the pendency of these proceedings.
Defendant's Exhibit 1 is a letter from the defendant's former employer, Fuss O'Neill Consulting Engineers verifying that because of lack of work he has been laid off. The letter is dated January 11, 2000.
Plaintiffs Exhibit A is a letter directed to plaintiffs counsel from Bechtel Corp., the defendant's present employer, setting forth his earnings and indicating that on a fairly regular basis the defendant receives considerably more than the base compensation reflected on his financial affidavit as a result of overtime. This exhibit appears to establish that on a fairly regular basis that there is considerable overtime or premium time overtime accorded to the defendant in addition to his base earnings which is the figure reflected on his financial affidavit.
By way of illustration from Plaintiffs Exhibit A, the Bechtel letter and accompanying wage statements:
 Pay period 9-17-2000 Regular pay $2,106.00, net $1,557.04
 Pay period 9-3-2000 Regular pay $2,340.00, net $1,847.12
 Pay period 8-20-2000 CT Page 12941 Regular pay $2,106.00, net $1,929.15
Defendant's Exhibit 1 is the individual tax return, State and Federal, for the plaintiff Gwyneth M. Wight, filing as a single person.
On the 1999 Connecticut return, her adjusted income is $17,437.00.
On the federal return, the figure appears to be the same for 1999.
 Discussion
This is a marriage of six years duration.
The parties have been separated for quite a few months.
This is the second marriage for both parties according to the information on the health form.
There are no children issue of this marital union.
There is no welfare involved.
The plaintiff is age 48 and described her health as good.
The defendant is age 40 and described his health as good.
The plaintiff has two jobs; one with Mohegan Sun and the other as a bus driver and her finances in those two positions has been already touched on.
The defendant has presently a position with Bechtel Civil Engineers which he has acquired after a short term of unemployment after having left his former employment with Fuss O'Neill.
The court notes that there is a considerable disparity between what the defendant shows on his financial affidavit incident to his employment as a civil engineer with Bechtel and what is reflected on the exhibit in that regard. It would appear that there has been a regular period of overtime that has continued at a relatively steady pace. It is true that the gross weekly wage shown on the financial affidavit appears to represent his base compensation; however, the court feels that there is a considerable discrepancy in that respect.
The breakdown in the marital union was apparently attributable in substantial measure by abusive or inappropriate derogatory language by the defendant directed to the plaintiff and admittedly the defendant in CT Page 12942 his testimony apologized for that conduct.
There has been a claim that there has been an inappropriate relationship between the defendant and a friend. The court will touch upon the requirements in order for the court to consider that claim in the law category to follow.
It would appear that the plaintiff manifestly is working hard with two positions in order to keep the economic ship afloat. The court is also mindful of the support that she receives from a former spouse with regard to children issue of that relationship.
On the basis of the testimony adduced and the exhibits presented, it would appear that the real estate jointly owned by the parties at 16 Oakwood Drive in Gales Ferry was prior to this marital union solely in the name of the plaintiff and admittedly there was a refinancing in which this defendant joined presumably to consolidate debt, two mortgages and a lower interest rate. The testimony would appear to indicate however that while the defendant was making financial remittances to the plaintiff that the plaintiff made all of the mortgage payments during the life of the marriage.
It would appear that the plaintiff is doing the best that she can on the basis of her age, education and overall financial circumstances and that the plaintiffs skills are probably not likely to markedly increase in the near term; however, as between the plaintiff and the defendant, the defendant has much the better of it with regard to present and future prospects and some period of financial support and assistance would appear to be warranted insofar as the plaintiff was concerned for a reasonable period of time.
In that respect the court has considered Mathis v. Mathis,30 Conn. App. 292 and Ippolito v. Ippolito, 28 Conn. App. 745.
 The Law
The Court has considered all of the statutes which apply in matters of this nature which include without limitation C.G.S. § 46b-62
regarding attorney's fees and C.G.S. § 46b-82 regarding alimony.
The Court has considered all of the applicable case law that govern the matter.
The Court has considered the testimony of the parties, their candor or lack thereof and all exhibits and the arguments of counsel.
CT Page 12943 In considering the issue of alimony, the Court has considered the length of the marriage, the cause of the dissolution, the age, health, station, occupation, employability, estate and needs of the parties.
The plaintiff has suggested inappropriate conduct on the part of the defendant with regard to a lady friend. In the complaint of the plaintiff filed July 27, 1999, the claim for dissolution is predicated upon irretrievable breakdown, adultery is not set forth as a ground or claim for the dissolution or the breakdown of the marriage. Adultery as a ground for dissolution under C.G.S. § 46b-40 requires proof that the other spouse has engaged in extramarital sexual relations citing Brodskyv. Brodsky, 153 Conn. 299 (1966). The adulterous relationship must be established by a fair preponderance of the evidence, again citingBrodsky.
In weighing the evidence of adultery, the court should exercise great care to see that it is not imposed upon through the intense interest of the parties to color the facts. It should not see evil where the circumstances may reasonably lend themselves to an innocent interpretation nor on the other hand should it refuse to reach that conclusion which the sound and unprejudiced judgement should lead to,Neff v. Neff 96 Conn. 273.
The evidence presented to the court in this proceeding does not establish an adulterous relationship by a fair preponderance of the evidence presented to the court.
The court enters the following orders.
The court grants to the plaintiff periodic alimony in the amount of $75.00 a week for a period of 12 months. The award of alimony is non-modifiable as to either term or amount.
This award of time-limited alimony is to provide the plaintiff with some further degree of financial stability in order that she may be able to continue to support herself and become completely self-dependent.
The parties will each have one-half of the defendant's 401K, which is in the amount of $10,499.00, one-half of said sum to each.
The court enters no order with regard to requiring the defendant to keep life insurance in full force and effect during the term of the alimony order.
The plaintiff may retain her equity interest in the real estate known as 16 Oakwood Drive in Gales Ferry. The title being presently in the CT Page 12944 names of both the plaintiff and the defendant jointly. The court directs that the defendant quit claim his interest in said property to the plaintiff. The deed of conveyance to contain a paragraph whereby the plaintiff will hold the defendant harmless as concerns the mortgage on the property and any real estate taxes or insurance levied or charged against the same.
The court enters no orders as to attorney's fees and leaves the parties to make their own arrangements with counsel.
The defendant is to sign the GMAC small check for $43.24 and deliver the same over to the plaintiff who may then sign the same and negotiate it.
Each party may keep and retain any other assets that they have or are shown in their financial affidavits free and clear of any claim of the other; this to include bank accounts, any stocks or bonds, personalty and motor vehicles.
The plaintiff may retain the very small modest 401K that she has in her own name.
Each party to be responsible for the debts and obligations shown on their respective financial affidavits. It would appear on the basis of what has been presented to the court that the principal cause of the breakdown of this marital union was verbal abuse by the defendant directed toward the plaintiff and his interest in another party, no matter how platonic.
The court grants the relief prayed for.
The parties are declared to be single and unmarried pursuant to the provisions of the statute.
The marital union is dissolved.
Austin, JTR